**BALD EAGLE AREA SCHOOL DISTRICT, Bellefonte Area School District, and State College Area School District**

v.

**The COUNTY OF CENTRE, BOARD OF ASSESSMENT APPEALS, and Vicki Wedler, Chairwoman, Sue Mascolo, Vice–Chairwoman, and Keith Bierly, Commissioner, Members of the Board of Commissioners and of the Board of Assessment Appeals, and Gerald N. Dann, Chief Assessor for Centre County.**

**Bald Eagle Area School District, Bellefonte Area School District, State College Area School District, Albert Hagg and Steven L. Stem**

v.

**The County of Centre, Board of Assessment Appeals, and Vicki Wedler, Chairwoman, Sue Mascolo, Vice–Chairwoman, and Keith Bierly, Commissioner, Members of the Board of Commissioners and of the Board of Assessment Appeals, and Gerald N. Dann, Chief Assessor for Centre County, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1999.
Decided Dec. 31, 1999.

Alfred K. Hettinger, Allentown, for appellants.

John R. Miller, Jr., Bellefonte, for appellees.

Before SMITH, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

SMITH, J.

Centre County (County) and the Centre County Board of Assessment Appeals (Board) (collectively Appellants) appeal from an order of the Centre County Court of Common Pleas that vacated a Board-adopted resolution assigning a zero value to all professionals trades and occupations subject to an occupational assessment tax (OAT) and granted mandamus requiring that the Board value occupations in accordance with Section 602 of The Fourth to Eighth Class County Assessment Law (County Assessment Law), Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.602. Appellants question whether the trial court erroneously granted mandamus when the Board of Assessment Appeals performed a discretionary act by valuing all occupations at zero and when Appellees had available the legal remedy of an assessment appeal; whether the trial court erroneously concluded that the Board failed to comply with Section 602 when it valued all occupations at zero; and whether the trial court failed to employ the proper procedure required for assessment appeals.

School Districts have the power to levy and collect an OAT under Section 2 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6902. Counties have a statutory duty, through their chief assessors, "to rate and value all subjects and objects of local taxation ... according to the actual value thereof, and in the case of subjects and objects of local taxation other than real property at such rates and prices for which the same would separately bona fide sell." Section 602(a) of the County Assessment Law. On May 26, 1998, the Board adopted Resolution No. 9, which established a zero value for all professions, trades, and occupations subject to the OAT. In the resolution, the Board stated that it is "impossible to achieve a fair and equitable method of assessing occupation taxes." The School Districts ultimately filed an assessment appeal and a manda-

mus action in the Court of Common Pleas, which consolidated the matters for hearings and on January 4, 1999 issued its decision.

The trial court overruled Appellants' preliminary objections to the mandamus action and held that Resolution No. 9 was the result of the Board's arbitrary exercise of discretion based upon a mistaken view of the law. The trial court concluded that the Board failed to fulfill its statutory duty to value occupations consistent with Section 602 of the County Assessment Law and the School Districts' right to raise revenue under the OAT. The trial court vacated Resolution No. 9 and ordered that the Board reinstate the prior 1968 valuations until the Board completed a reassessment if it elected to do so.

Upon review, the Court finds no basis to support Appellants' contentions that the trial court erred. The Court rejects Appellants' procedural claims as they offered no authority or proof to demonstrate that the trial court adopted improper hearing procedures or that the School Districts' failure to provide earned income tax roll information precluded Appellants from performing their duty to value occupations. The Court therefore affirms the trial court's order on the basis of the well-reasoned and thorough opinion issued by the Honorable Stewart L. Kurtz in *Bald Eagle Area School Dist. v. County of Centre, Board of Assessment Appeals*, —— D. & C.4th —— (1999) (C.C.P. of Centre County, Nos. 98–2379 & 98–2433, filed January 4, 1999), which is attached hereto as Appendix A.

### ORDER

AND NOW, this 31st day of December, 1999, the order of the Court of Common Pleas of Centre County is affirmed, and the Court hereby adopts the opinion issued by the Honorable Stewart L. Kurtz in *Bald Eagle Area School Dist. v. County of Centre, Board of Assessment Appeals*, ——

D. & C.4th —— (C.C.P. of Centre County, Nos. 98–2379 & 98–2433, filed January 4, 1999).

### Appendix A

### *MEMORANDUM*

These cases were consolidated by stipulation and tried to the Court November 30, December 1, 1998. The factual backdrop for this controversy is not seriously in dispute, and will be set forth below.

### I. Background

For many years, Bald Eagle Area School District, Bellefonte Area School District and State College Area School District (hereafter "School Districts") have levied and collected an occupation tax as authorized by Section 2 of "The Local Tax Enabling Act". Act of December 31, 1965, P.L. 1257, as amended, 53 P.S. § 6902.

The tax has rarely if ever been described in complimentary terms. Thus, the late, Honorable R. Paul Campbell, President Judge of the Centre County Court of Common Pleas for twenty years, opined in 1974:

> "We do not believe that any person endowed with a devious mind could dream up a more inequitable tax than the occupation tax, and we sincerely hope that the Legislature will remove it from the statute books and replace it with a more equitable tax at the earliest moment."

*The State College Area School District,* 9 C.C.L.J. 417 at p. 419 (1974).

Nonetheless, the Legislature ignored the sage advice of Judge Campbell, and year after year, the School Districts have continued to levy and collect the unpopular occupation tax. In this regard, the amount of revenue generated by the tax is not insubstantial. The projected revenue for the School Districts in 1998–99 is $6,497,086.00.[1]

---

1. The breakdown is: State College Area, $4,445,440.00; Bellefonte Area, $1,279,-

Since 1968, computation of the tax has been predicated upon a schedule of classifications and assessments prepared by Mr. David S. Barr who served Centre County from 1966 to 1976 as Chief Assessor. Annually in May, the Centre County Board of Assessment Appeals (hereafter "the Board") by resolution has valued occupations by adopting the occupational classification and assessment scheme devised by Mr. Barr. This procedure has allowed the School Districts to prepare their budgets for the fiscal year beginning July 1 of the following year.

The curtain rose for this litigation May 26, 1998, when without fanfare, the Board adopted Resolution No. 9 of 1998, which provided:

### RESOLUTION NO. 9 OF 1998

**WHEREAS, it is the finding of this Board that the valuations of professions, trades, and occupations, used as the basis of occupational assessments in Centre County, are outdated, incomplete, unfair, inequitable, and fail to reflect current economic, social, or educational reality to such an extent as to bear no relationship to the actual value of the occupations; and**

**WHEREAS, after a year of legal action and good faith negotiations with the school districts of Centre County, it is impossible to achieve a fair and equitable method of assessing occupation taxes; and**

**WHEREAS, it is the finding of this Board that any taxes assessed on the basis of the current valuations would be inequitable; and**

**WHEREAS, the Centre County Board of Assessment Appeals no longer desires to continue the current unjust system of taxation upon the citizens of Centre County; and**

386.00; Bald Eagle Area, $772,260.00.

**WHEREAS, the value to be used in the year 1999 must be set by June 30, 1998;**

**NOW THEREFORE BE IT RESOLVED that the Centre County Roll of Occupational Assessments is hereby revised so as to reflect the value of ZERO for all professions, trades, and occupations for the period beginning January 1, 1999.**

**ADOPTED this 26th day of May, 1998.**

School Districts did not need the input of sophisticated economists and accountants to determine the impact of this decision by two members of the Board. They appealed and were heard August 13, 1998; but, the Board, again by a vote of two to one, rejected on August 18, 1998, the notion that they had abused their discretion in valuing all occupations at zero. School Districts promptly appealed that decision to this Court (98–2379), and, for good measure, initiated an action in mandamus as well (98–2433).

### II. Statutory and Legal Landscape

Since resolution of this brouhaha calls upon this Court to interpret three statutes, it is appropriate that we include those expressions of the Legislature in this epistle. Also, since the Supreme Court of Pennsylvania has had occasion to express its judgment with respect to the interface of these statutes, we will set forth that definitive explication.

As previously noted, The Local Tax Enabling Act of 1965, a reenactment of the appropriately labeled Tax Anything Act of 1947, empowers school districts of the second through fourth class in their discretion to "... levy, assess and collect ... *such taxes as they shall determine* on persons, transactions, *occupations,* privileges, subjects and personal property within the limits of such political subdivisions, ...". 53 P.S. § 6902. (Emphasis added.)

Next, Section 201 of "The Fourth to Eighth Class County Assessment Law" defines as proper subjects of taxation "All salaries and emoluments of office, all offices and posts of profit, professions, trades, and *occupations,* ...". 72 P.S. § 5453.201(b). (Emphasis added.)

Third, Section 602 of "The Fourth to Eighth Class County Assessment Law" provides that:

> "(a) *It shall be the duty of the chief assessor to rate and value all subjects and objects of local taxation.* ... according to the actual value thereof, and in the case of subjects and objects of local taxation other than real property at such rates and prices for which the same would separately bona fide sell....". 72 P.S. § 5453.602. (Emphasis added.)

Finally, the Pennsylvania Supreme Court in *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 470, 244 A.2d 1, 5 (1968), considered these statutes and ruled:

> "We therefore hold that the Tax Anything Acts of 1947 and 1965 permit the school district to pass an occupation tax (levy), compute the amount owed by each taxpayer (assess) and secure the tax revenue itself (collect). But ... *school district cannot place its own value on the occupations to be taxed.* This may be done only by the county assessor, who bears the responsibility for valuing all the subjects and objects of taxation in his county." (Emphasis added.)

### III. Preliminary Objection

Defendants have preliminarily mounted a strong assault against the propriety of the action filed to No. 98–2433 in which mandamus relief is sought. To be frank, we failed to understand until trial the reason why Defendants were so determined to confine our meddling to the assessment appeal (No. 98–2379). At trial however it became apparent that Defendants' purpose was founded upon a procedural defense

asserted in the assessment appeal that was factually intriguing but legally impuissant. We will address that matter but are compelled at this juncture to resolve whether Plaintiffs in 98–2433 have established with sufficient clarity their right to mandamus relief.

 It is accurate, as Defendants have pointed out, that the writ of mandamus is not an over the counter remedy available on demand. Rather, it is dispensed sparingly and as a last resort. In this regard, the Supreme Court of Pennsylvania has succinctly summarized that "... mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment and discretion. It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken". *Pennsylvania Dental Association v. Commonwealth, Insurance Department,* 512 Pa. 217, 228, 516 A.2d 647, 652 (1987). A caveat by the same court is that mandamus will lie "... *where by a mistaken view of the law or by an arbitrary exercise of authority there has been in fact no actual exercise of discretion*". *Tanenbaum v. D'Ascenzo,* 356 Pa. 260, 263, 51 A.2d 757, 758 (1947). (Emphasis added.)

Defendants argue that in this case they performed their statutory duty, and exercised their discretion by valuing all occupations at zero.

That argument begs the question since it presumes that zero valuation is fulfillment of the statutory duty "... to rate and value all objects of taxation ..." (72 P.S. § 5020–402(a)) and a proper as opposed to an arbitrary exercise of discretion.

Defendants also have proffered as a fallback position the proposition that Plaintiffs have an adequate legal remedy, and correctly cite appellate authority to the effect that if statutory remedies are available mandamus will not lie. *Haywood v. Penn-*

*sylvania State Police,* 541 Pa. 100, 104, 660 A.2d 1324, 1326 (1995).

Initially, we can't resist the temptation of responding that if Defendants are correct with respect to the clever procedural defense they have asserted in Civil No. 98–2379—the assessment appeal—Plaintiffs have no remedy at all since there it is argued that to meet its burden of proof, the School Districts were obliged to present in their case in chief "... relevant, credible evidence establishing *new* values ...". (Board's Trial Brief at p. 14.) (Emphasis added.) Thus, in a nifty bit of legal legerdemain, the Board reasons that School Districts procedurally must either elect between the Scylla of flouting the Supreme Court mandate not to value occupations or the Charybdis of failing to meet its burden of proof in the assessment appeal by failing to introduce into evidence a reassessment of all occupations in Centre County.

But, although we thoroughly appreciate the ingenuity of the procedural argument, our judgment is that it is simply wrong since it was premised upon a body of law dealing exclusively with real estate assessment appeals.

▪ The issue remains as to whether or not mandamus is appropriate since there is a statutory appeal process in assessment matters, a process pursued by School Districts.

Two appellate court decisions answer the question favorably for the School Districts.

First is *Banger's Appeal,* 109 Pa. 79 (1885), a significant case since it involved an occupation tax assessed and levied by the City of Williamsport in 1881.

George S. Banger was a resident property owner in Williamsport and he challenged the tax upon his occupation, a tax which the City admitted was based solely upon his income.

The Supreme Court was therefore confronted in 1885 with the questions of whether occupations were a proper subject of taxation, and whether the value of an occupation could be based solely upon income derived from the trade or profession.

Initially, however, the Court was confronted with a procedural issue. Williamsport argued that Mr. Banger had improperly sought to restrain collection of the tax since he had a legal remedy available to him. In other words, Williamsport, alike the Board in this case, urged the Court to abstain from acting and force Mr. Banger to pursue his legal remedies.

The Supreme Court rejected this argument observing that "... where the tax is lawfully assessed, or where the matters complained of are mere irregularities in valuation or assessment ..." an equity court should abstain and direct the taxpayer to the pursuit of his or her legal remedies. However, "... where there is either a want of power to tax, or a disregard of the Constitution in the mode of assessment, we have no doubt of the power and the duty of a court of equity to interfere: ...". (Citation omitted.) *Banger's Appeal,* 109 Pa. at 91.

As a housekeeping matter, we note that the Court ruled occupations were a proper subject for taxation but valuation could not constitutionally be based solely upon income derived from an occupation.

The second case that addressed the issue is *City of Lancaster, et al. v. County of Lancaster, et al.,* 143 Pa.Commonwealth 476, 599 A.2d 289 (1991), where the question was the methodology of reassessment employed by Lancaster County. Lancaster County, alike the Board in this case, objected to the mandamus complaint on the ground that a legal remedy existed via the statutory appeal process. The Commonwealth Court rejected the County's argument since the conduct of the County pervaded the entire taxing scheme. The court noted that "To force every aggrieved taxpayer to assume the task of appealing, when the larger question can be expedi-

tiously and efficiently resolved in a single action, would be unnecessarily burdensome on both property owners and the judicial system". 143 Pa.Commonwealth at p. 499, 599 A.2d at p. 300.

While we are always concerned with judicial husbandry, we do not perceive in these cases any particular benefit to the judiciary from proceeding in mandamus. However, we do think it is clear that the issue in this case, alike the questions presented in *Banger's Appeal, supra,* and *City of Lancaster, supra,* deserve a single judicial response since the impact of Resolution 9 on the taxing power of the various school districts is global in nature.

For these reasons, we will overrule the objection to the mandamus action.

### IV. Analysis

■ The issue for decision is whether Resolution 9 is a lawful exercise of discretion by the Board. In this regard, there is no debate about the interface between the statutory right of school districts to levy and collect a tax on occupations, and the corresponding duty of the Board of Assessment Appeals to value occupations.

The Board in its written submission to this Court has attempted to persuade that what Resolution 9 accomplished was a long overdue reassessment of the value of all occupations in Centre County. The Board contends that after careful consideration of their duty to value, and the statutory standard set forth in 72 P.S. § 5453.602(a), they concluded that no value except zero produced a result that was fair and equitable. The linchpin of this conclusion was a finding, set forth in the resolution, that valuation of occupations was impossible.

The record created at trial refutes the notion that valuation is impossible, and the argument that Resolution 9 was the product of careful, reasoned action by the Board.

Testimony did establish that valuing occupations as opposed to real estate is not the subject matter of much written guidance nor a topic of discussion among assessors when they gather to talk assessing. Nonetheless, Lycoming County was able to reassess occupations in 1998 (Plaintiffs' Exhibit 8), and that effort has already received commendation from our colleague, the Honorable J. Michael Williamson of the 25th Judicial District, Specially Presiding, who after a review of the reassessment opined ". . . that the commissioners and their staff did an excellent job of putting together an occupational assessment schedule which reflects a common sense ranking of occupations and fair, equitable, and uniform valuations applied to those assessments". *In re: Appeal of Elliot B. Weiss,* Lycoming County No. 98–00,408, November 9, 1998, Slip Opinion at p. 4. (Plaintiffs' Exhibit 9.)

On the subject of the Board's research, at trial, we heard the fervent, highly credible testimony of Commissioner Keith Bierly. In his presentation, we heard frustration and anger engendered by years of coping with a tax few taxpayers understand, a tax difficult and expensive to collect, a tax ignored by many, and a tax about which he received the most complaints. And we detected not a little resentment generated by the Commissioner's perception that School Districts were unwilling to participate in the reformation of occupation valuations but rather were quite content to leave the Board stuck in the morass that the present schedule of occupation assessments created.

In sum, Commissioner Bierly's forthright appraisal of the status quo left little doubt in our mind that Resolution 9 was not the thoughtful, well-researched reassessment portrayed by counsel but rather an angry reaction intended to gain the attention of the School Districts so that a public dialogue could commence aimed at doing something about this unpopular tax.

The issue however is not motivation for Resolution 9 but rather its legality, a ques-

tion that calls upon this Court to engage in statutory construction.

The Legislatures and our appellate courts have formulated guidelines for courts to follow in the interpretation of statutes. The Supreme Court of Pennsylvania recently summarized these concepts as follows:

"Our rules of statutory construction make clear that in interpreting statutes *we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s)*. 1 Pa.C.S. § 1921(a). Where the words are clear and free from ambiguity the legislative intent is to be gleaned from those very words. Where, however, the statute is unclear or susceptible of differing interpretations, the courts must look to the necessity of the act, the object to be attained, the circumstances under which it was enacted and any legislative or administrative interpretations thereof. (Citation omitted.) In ascertaining the legislative intent of a particular statute it is presumed, inter alia, that the legislature did not intend a result that is absurd or unreasonable nor one that would be violative of the United States Constitution or the Constitution of this Commonwealth. It is also presumed that the legislature intends to favor the public interest as opposed to any private interest. See generally, 1 Pa.C.S. § 1922."

*Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 430, 431, 664 A.2d 84, 87 (1995). (Emphasis added.)

Application of these principles leads to these conclusions:

1. The Legislature intended that school districts could tax occupations in order to raise revenue.

2. The Legislature intended that counties, acting through the chief assessor, must value occupations in a manner consistent with the right of school districts to tax occupations for revenue purposes.

3. Since the Legislature did not expressly give to counties the discretion to deny school districts the right to tax occupations, counties cannot value occupations in a manner that deprives school districts of the ability to raise revenue.

Since the Board concedes in its Trial Brief that Resolution 9 has deprived Plaintiffs of their right to levy and collect the occupation tax (Board Trial Brief at p. 23), our judgment is that the Resolution constitutes an abuse of the very limited statutory discretion conferred upon the county and represents an intrusion by the Board into a realm reserved exclusively for the Legislature. Therefore we will enter an order vacating the resolution, and directing that the 1968 valuations remain in effect until a reassessment is completed if that is the direction the Board elects to proceed.

### Conclusion

Since we have the floor, we offer some parting thoughts.

Judge Campbell had it right in 1974 when he expressed the hope that the Legislature would eliminate occupations as a subject of taxation. And, it is clear that the distinguished jurist had in mind a replacement scheme of taxation that was simple and equitable and would satisfy the fiscal needs of municipalities, counties and school districts in a manner that did not create discord among these taxing bodies and would engender among hostile taxpayers a sense that at least what they're paying is fair. But, for some reason, the Legislature just doesn't get it since their response to date has been irresponsible at best. Senate Bill 669 which was passed last year strikes us as nothing more than legislative jabberwocky designed solely to quiet, for a brief moment, the need for real reform. Our hope is that Commissioner Bierly and others like him will exert pressure upon the only body that has the authority (but not the inclination) to bring an

end to taxes alike the occupation tax and to put in place a method of taxation not unlike the Pennsylvania Income Tax that generates grudging respect.

BY THE COURT,

/s/ Stewart Kurtz

Judge, Specially Presiding

DATED: January 4, 1999

### ORDER

AND NOW, this 4th day of January, A.D., 1999, for the reasons set forth in a Memorandum filed this date It is Ordered that:

1. The appeal of Appellants (98–2379) is sustained, and Resolution 9 adopted by Appellees May 26, 1998, is set aside and vacated.

2. The preliminary objections of Defendants to Plaintiffs' complaint in mandamus are overruled.

3. Defendants are ordered to forthwith value all occupations in accordance with Section 602 of "The Fourth to Eighth Class County Assessment Law", 72 P.S. § 5453.602, in a manner consistent with the opinion of this Court that the Legislature intended occupations to be taxable and an object upon which school districts could levy and collect a tax.

4. Until such time as Defendant[s] have performed their statutory duty, the values established in the 1968 assessment shall continue as the occupational assessment schedule for use in the computation of the occupation tax.

BY THE COURT,

/s/ Stewart Kurtz

Judge, Specially Presiding