**Johnna SEETON, Appellant**

v.

**John T. ADAMS, District Attorney of Berks County, (in his official capacity only).**

Commonwealth Court of Pennsylvania.

Argued March 13, 2012.

Decided Aug. 9, 2012.

Stephen M. Geday, North Wales, for appellant.

Matthew J. Connell, West Chester, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

Johnna Seeton, Humane Society Police Officer of Berks County, appeals an order of the Court of Common Pleas of Berks County dismissing her action against the District Attorney of Berks County. Seeton seeks a writ of mandamus to compel the District Attorney to prosecute the Pike Township Sportsmen's Association for conducting a live pigeon shoot in a manner that Seeton believes to have violated the Animal Cruelty Law, 18 Pa.C.S. § 5511. Concluding that the trial court did not err in holding that the District Attorney's exercise of prosecutorial discretion is beyond

the reach of a writ of mandamus, we affirm.

As the County's Humane Society Police Officer, Seeton has responsibility to enforce the Animal Cruelty Law. 22 Pa.C.S. § 3708(a).[1] Her enforcement tools include the authority "to initiate criminal proceedings" and civil injunction proceedings. 18 Pa.C.S. § 5511(i).[2] The Animal Cruelty Law proscribes, *inter alia,* the wanton and cruel treatment of animals and states, in relevant part, as follows:

(1) *A person commits an offense if he wantonly or cruelly illtreats, overloads,. beats,. otherwise abuses any animal, or neglects any animal as to which he has a duty of care,* whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

18 Pa.C.S. § 5511(c)(1) (emphasis added).

In December 2009, Seeton filed two criminal citations with a magisterial district judge that charged the Pike Township Sportsmen's Association with wanton and cruel treatment of pigeons at its October 18, 2009, "live pigeon shoot." In these "sporting" events, pigeons are placed into a trap and launched into the air to be fired upon by members of the club and their guests. The goal is to shoot the pigeons so they fall within a designated scoring area. Pigeons that do not die after being shot are corralled by "trapper boys" and dispatched by having their necks broken or their heads cut off. The wounded pigeons that escape the trapper boys either die a slow death or survive their wounds to live in the wild. The citations alleged that the treatment of injured pigeons violated the Animal Cruelty Law, 18 Pa.C.S. § 5511(c)(1).

These criminal citations were not Seeton's first effort to enforce the Animal Cruelty Law against the Sportsmen's Association's live pigeon shoots. In 2001, Seeton filed a suit in equity against the Sportsmen's Association seeking, *inter alia,* a permanent injunction against future pigeon shoots. The gravamen of her 2001 complaint was the treatment of birds wounded in the pigeon shoot; the complaint recognized that live pigeon shoots are not, *per se,* illegal in Pennsylvania. The trial court issued a narrow injunction, ordering the Sportsmen's Association to treat injured birds in a "reasonable and non-abusive manner."[3] Order of Febru-

---

1. Section 3708(a) provides, in relevant part, that

[a]n individual appointed as a humane society police officer ... shall have power and authority to exercise the powers conferred under 18 Pa.C.S. § 5511 (relating to cruelty to animals) in enforcement of animal cruelty laws only within the particular county whose court of common pleas issued the appointment. The individual has no power or authority ... in any ... county whose court of common pleas has not issued an appointment.

22 Pa.C.S. § 3708(a).

2. It states, in relevant part, as follows:

[a]n agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the Commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure. An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of this Commonwealth, shall have standing to request any court of competent jurisdiction to enjoin any violation of this section.

18 Pa.C.S. § 5511(i).

3. The order specified, *inter alia,* that to satisfy the injunction, trappers under the age of eigh-

ary 14, 2012, at 1. The court denied Seeton's broad injunction request, holding that there was no legal authority for shutting down the pigeon shoot or for ordering the sponsors of the event to provide veterinary care to birds that were injured, but not killed, in the shoot.

On December 14, 2009, four days after Seeton filed her criminal citations, the District Attorney of Berks County, John T. Adams, contacted her and directed her to withdraw the criminal citations. The District Attorney advised Seeton that, contrary to her belief, it is well settled that live pigeon shoots do not violate the Animal Cruelty Law and, therefore, he could not prosecute her citations. He advised her to pursue civil remedies to the extent she believed that the Sportsmen's Association had violated the 2001 injunction.

Seeton refused to withdraw the citations. On December 28, 2009, the District Attorney wrote the district magistrate and directed him to withdraw the citations. On January 13, 2010, the district magistrate complied, removing the citations from the docket. When Seeton challenged the District Attorney's actions, he responded in an e-mail, explaining, in relevant part, as follows:

> On April 16, 2002, Judge Scott Lash of the Court of Common Pleas of Berks County issued an opinion and ruling ... that in pertinent part stated that pigeon shoots do not constitute a violation of 5511(c) Cruelty to Animals. Judge Lash also cites for support of that position the case of *Mohler v. Labor Day Committee* [443 Pa.Super. 651], 663 A.2d 162. Fur-

thermore, Judge Lash in that same case stated that the deprivation of veterinary care language found in 5511(c) does not apply to pigeon shoots. *As I have told many of your fellow supporters, I understand your plight but I am bound to follow the law. The law as stated in Judge Lash's opinion is clear.* My strong suggestion is that your only way to combat the law as set forth in the cases cited above is to lobby your state legislators to have them amend the Cruelty to Animals Statute, 18 Pa.C.S.A. 5511 to set forth that these type of events (pigeon shoots) are illegal....

Reproduced Record at 5a (R.R. —) (emphasis added).

On July 7, 2010, Seeton filed an action in mandamus seeking to compel the District Attorney to prosecute the Sportsmen's Association for the alleged violations of the Animal Cruelty Law arising from its pigeon shoot of October 18, 2009. The complaint asserted that the District Attorney has a mandatory duty to enforce the Crimes Code, including those provisions that make up the Animal Cruelty Law, and that he had refused to fulfill that duty by withdrawing the criminal citations Seeton issued to the Sportsmen's Association. The complaint acknowledged that pigeon shoots do not *per se* violate the Animal Cruelty Law, but it asserted that the mistreatment of wounded birds was criminally actionable. The complaint further asserted that it was proper for the court to review the District Attorney's exercise of prosecutorial discretion because it was based upon a mistake of law.[4]

---

teen had to turn the injured birds over to adults, who would be responsible to "dispatch" the injured birds by "cervical subluxation or decapitation." *Id.* at 2. Further, the order stated that at "no time shall anyone kick, swing, stomp, slam or otherwise further abuse the birds." *Id.* Finally, the Sports-

men's Association was ordered to shoot injured birds that could not be retrieved.

**4.** The complaint alleged that because the District Attorney had accepted campaign contributions from a political action committee with ties to the Sportsmen's Association, he acted in bad faith. The complaint alleged

On July 29, 2010, the District Attorney filed preliminary objections in the nature of a demurrer. The demurrer was based upon the theory that a district attorney cannot be compelled by a writ of mandamus to exercise his prosecutorial discretion in a particular way, which includes the initiation or continuation of criminal proceedings. The demurrer also noted that Seeton had other remedies at law. Specifically, Seeton could pursue contempt if she believed the Sportsmen's Association was in violation of the 2001 injunction.

On October 29, 2010, the trial court sustained the District Attorney's preliminary objections and dismissed Seeton's complaint. The trial court held that a writ of mandamus was not available to review the decisions of the District Attorney. In relevant part, the trial court explained:

> We hold that Seeton, in her capacity as a police officer, is without authority to challenge discretionary acts of the district attorney. *As she is not a proper party with a clear right to relief as required to sustain a mandamus action, she, therefore, is without standing to bring this action.*
>
> Our determination stems from the role and functions of the office of district attorney. As stated by the Pennsylvania Supreme Court in *Commonwealth v. Stipetich*, 539 Pa. 428, 430, 652 A.2d 1294, 1295 (1995):
>
>> It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any given case. "A district attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case."
>
> * * *
>
> In this case, Seeton, like the District Attorney, is acting on behalf of the Commonwealth, but in her capacity as a police officer. In this capacity, she is granted the authority to conduct investigations, issue citations and make arrests, but the extent of her prosecutorial abilities is limited, being subject to the authority of the district attorney. *The district attorney is by our constitution and by statute, the chief law enforcement official of the county in which he sits. There is no support in the law permitting a subordinate law enforcement official to challenge the District Attorney's decision on matters which lie within his discretion.* To permit such a challenge would allow police to bypass or ignore a decision of the district attorney in any case where they believed that he committed a mistake of law, thereby undermining his status and compromising his ability to oversee law enforcement in his county.

Trial Court Opinion at 5–7 (citations omitted) (emphasis added). Seeton appealed to this Court.

On appeal,[5] Seeton raises three issues for our review. First, she contends that

---

that the political action committee supports live pigeon shoots and that its corporate secretary is a member of the Sportsmen's Association. The trial court dismissed Seeton's complaint on other grounds, and Seeton has not argued whether the District Attorney's alleged bad faith would sustain her complaint.

**5.** When reviewing whether a trial court's order sustaining preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area School District,* 599 Pa. 232, 240, 961 A.2d 96, 101 (2008). We may sustain preliminary objections when, based on the facts pleaded, it is clear that the com-

the trial court erred in dismissing her complaint because she has a clear legal right to a writ of mandamus to compel the District Attorney's enforcement of the Animal Cruelty Law. Second, she argues that the trial court erred by *sua sponte* raising the issue of her standing to file her complaint. Third, she argues that the trial court erred in holding that she lacked standing to enforce the Animal Cruelty Law.[6]

We begin with Seeton's argument that the trial court erred in holding that she did not have a clear legal right to relief. She contends that, contrary to the trial court's conclusion, mandamus draws no distinction between subordinate law enforcement officials and private citizens. She further contends that although the decision to prosecute is discretionary, courts may review a public official's exercise of discretion where it is alleged that the exercise was arbitrary, fraudulent, or based upon a mistaken view of the law and correct the erroneous exercise of discretion by writ of mandamus. Seeton contends that the District Attorney's decision to withdraw her citation was based upon a mistaken view of the law and, therefore, can be corrected by writ of mandamus.

■■■ We begin with a review of the principles of mandamus. The common law writ of mandamus lies to compel a public official's performance of a ministerial act or a mandatory duty. It is not available to revise a public official's decision that results from the exercise of discretion. 18

plainant will be unable to establish a right to relief. *Id.* We must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible therefrom. *Id.* at 241, 961 A.2d at 101. However, we need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. *Pennsylvania Department of Banking v. NCAS of Delaware, LLC,* 995 A.2d 422, 433 n. 13 (Pa.Cmwlth.2010).

6. On December 21, 2010, this Court issued an order directing the parties to address the following questions at oral argument:

 1. Is a district attorney under Pennsylvania Rule of Criminal Procedure 457 without authority to withdraw a citation for a summary violation of 18 Pa.C.S. § 5511(c)? Compare with Pa. R.Crim.P. 551.

 2. Can the Commonwealth Court, in an action in mandamus, direct a District Attorney to apply the correct law when deciding whether to prosecute a citation filed by a Humane Society Officer?

 3. What relief, if any, does a law enforcement officer have, where the District Attorney has misapplied the law when deciding not to prosecute a citation?

 4. Is the separation of powers doctrine violated if this Court simply directs a District Attorney to apply the correct law when exercising in his prosecutorial discretion whether to prosecute a citation filed by a Humane Society Officer?

 5. Does prosecutorial discretion include the liberty to misapply the law?

 6. Is a District Attorney beyond the Court's ability to correct him on his flagrant misinterpretation of the Animal Cruelty Law and Pennsylvania caselaw interpreting that Law?

Rule 457(A) provides that an "affiant, or the affiant's designee" may "withdraw one or more of the charges." Pa. R.Crim. P. 457(A). Similarly, Rule 551 provides that "the attorney for the Commonwealth, or his or her designee, may withdraw one or more of the charges." Pa. R.Crim. P. 551. Moreover, Rule 454(C) provides that "[t]he attorney for the Commonwealth may appear and assume charge of the prosecution." Pa. R.Crim. P. 454(C). The District Attorney argued that his authority to "assume charge of the prosecution" includes the authority to withdraw citations such as those filed by Seeton. He also argued that Rule 457 is simply a permissive rule that allows an affiant to withdraw charges.

We do not decide this case on the basis of the Pennsylvania Rules of Criminal Procedure but, rather, on the law of mandamus and the doctrine of prosecutorial discretion, which were the issues raised on demurrer by the District Attorney.

STANDARD PENNSYLVANIA PRACTICE 2D § 99:18 (2005). Mandamus is a high prerogative writ that is rarely issued and never where the plaintiff seeks to interfere with a public official's exercise of discretion. Rather, mandamus is appropriate to compel a public official to fulfill a mandatory duty that is ministerial in nature. As explained by this Court,

> [t]he requirements to sustain an action in mandamus are clear. It is an extraordinary remedy designed to compel public officials to perform a ministerial act or mandatory duty. . . .

*Bradley v. Casey,* 119 Pa.Cmwlth. 180, 547 A.2d 455, 458 (1988). Similarly, in *Nader v. Hughes,* 164 Pa.Cmwlth. 434, 643 A.2d 747, 753 n. 13 (1994) (emphasis added), we observed that mandamus is appropriate to "compel the public official to perform acts which are required or obliged to be performed and *which do not involve an exercise of discretion* or judgment."

■ Nevertheless, a writ of mandamus can be used to compel a public official to exercise discretion where the official has a mandatory duty to perform a discretionary act and has refused to exercise discretion. In establishing this use of mandamus, our Supreme Court explained as follows:

> But *where by a mistaken view of the law or by an arbitrary exercise of authority there has been in fact no actual exercise of discretion, the writ will lie.*

*Tanenbaum v. D'Ascenzo,* 356 Pa. 260, 263, 51 A.2d 757, 758 (1947) (citation omitted) (emphasis added). Stated otherwise, an official's refusal to exercise discretion could be intentional, *i.e.,* "arbitrary," or unintentional, *i.e.,* "by a mistaken view of the law." Whatever the reason for the official's refusal to exercise discretion, a writ of mandamus "will lie" to compel the official to do so. *Id.*

■ After *Tanenbaum,* the Supreme Court again addressed the extent to which a writ of mandamus can be used to compel a public official to exercise discretion where he has refused to do so. It explained as follows:

> It is well settled that in a mandamus proceeding a court can compel a public official who is vested with a discretionary power to exercise that discretion; but *(unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment.* Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a court or a jury or a person aggrieved; and a *Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable.*

*Maxwell v. Board of School Directors of School District of Farrell,* 381 Pa. 561, 566, 112 A.2d 192, 195 (1955) (emphasis added). The parenthetical phrase, i.e., "unless the discretion is arbitrarily . . . exercised or . . . based upon a mistaken view of law" is a direct reference to *Tanenbaum's* observation that a refusal to exercise discretion can be intentional ("arbitrary") or unintentional ("mistaken") in nature. This parenthetical phrase did not expand the scope of mandamus. We know this because the Supreme Court went on to state in *Maxwell,* twice, that the court "cannot interfere with or control the official's discretion" and "it is the discretion of the official which prevails and not that of a court." The parenthetical phrase in *Maxwell* did not establish the principle that an official's mistaken exercise of discretion can be corrected by a writ of mandamus, as argued by Seeton and the dissent. One will

search in vain for such a holding in this or in any jurisdiction.[7]

 In sum, *Maxwell* and *Tanenbaum* stand for the principle that a public official's refusal to exercise discretion can be addressed in a mandamus action. In no way do *Maxwell* and *Tanenbaum* retreat from the fundamental principle that mandamus is not available to compel an official to exercise his discretion in a particular way. Indeed, our Supreme Court has long enjoined that where a public official "is clothed with discretionary powers, and has exercised those powers, mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, *though in fact, the decision may be wrong.*" *Anderson v. Philadelphia,* 348 Pa. 583, 587, 36 A.2d 442, 444 (1944) (emphasis added).[8]

 At issue here·is whether a writ of mandamus can be issued, as asserted by Seeton, to "correct" the District Attorney's "mistaken view" of the Animal Cruelty Law in withdrawing the citations Seeton issued to the Sportsmen's Association. The District Attorney argues that a writ of mandamus is unavailable to Seeton because she seeks to undo his prior exercise of discretion and to compel its exercise in a particular way. Further, even if mandamus were otherwise available, it is not in this case because the decision not to prosecute criminal charges is beyond judicial review under any theory.

 District attorneys are responsible for "all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which [they are] elected ..." Section 1402 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1402. It has been observed that a "'prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous....'" 2 KENNETH C. DAVIS, ADMINISTRATIVE LAW TREATISE § 9:1, at 216 (2d ed.1979) (quoting Justice Robert H. Jackson of the United States

---

**7.** Accurate computation of a prison sentence is a mandatory duty of the Department of Corrections, and it is a mathematical exercise that does not involve discretion. Therefore, a failure (or refusal) to compute a sentence in accordance with statute is properly addressed in mandamus. *Brown v. Department of Corrections,* 686 A.2d 919, 921 (Pa.Cmwlth.1996). A similar result was reached in *Bald Eagle Area School District v. County of Centre, Board of Assessment Appeals,* 745 A.2d 689 (Pa. Cmwlth.1999). Under a prior version of the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended, formerly* 72 P.S. §§ 5453.101–5453.706, a county board of assessment was given the mandate to value occupations for tax purposes. In *Bald Eagle,* the county assessment board valued all objects of taxation at zero dollars. This Court rejected the board's argument that it had exercised its discretion and, therefore, was immune from the school district's mandamus action. We concluded that setting all objects of taxation at zero was, in actuality, a refusal to exercise discretion. Accordingly, we affirmed the issuance of a writ of mandamus directing the board to do the valuation.

**8.** Mandamus is so rare that even where the plaintiff seeks to compel a ministerial act and the act is mandatory, "its issuance is not a matter of right but in certain circumstances is a matter for the sound discretion of the court." *Travis v. Teter,* 370 Pa. 326, 330, 87 A.2d 177, 179 (1952). Accordingly, a writ of mandamus has been refused where its issuance would be inequitable or would cause "disorder and confusion in municipal or governmental departments." *Waters v. Samuel,* 367 Pa. 618, 622, 80 A.2d 848, 849 (1951) (refusing a request for a writ to have police records revised to correct the birth date of a patrolman who had lied about his age to gain employment because of the confusion and disorder that would be caused by undertaking extensive record changes). In sum, mandamus is not automatic even where the grounds are proven.

Supreme Court). Davis explains that a prosecutor's duty to enforce a statute is usually presented in the strongest terms, but the legislature assumes that, nevertheless, there is a power not to enforce. Further, a prosecutor's decision *not* to enforce a law is beyond judicial review. Davis explained these precepts as follows:

An outstanding fact of major importance about the American system of law and government is that nearly all statutes which provide in absolute terms for enforcement are nullified in some degree by an assumed discretionary power not to enforce. The usual discretionary power not to enforce is almost never delegated by the legislative body. It is not subject to a statutory standard. It is not checked by an independent reviewer. It is not insulated from ulterior influence the way that judicial action is customarily insulated.... *And discretionary power not to enforce is almost always immune to judicial review, even for abuse of discretion.*

*Id.* § 9:1 at 217–18 (emphasis added). The Supreme Court of the United States will not interfere with a prosecutor's discretion. *See, e.g., United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."). Neither will the Pennsylvania Supreme Court. *See, e.g., Commonwealth v. Stipetich,* 539 Pa. 428, 430, 652 A.2d 1294, 1295 (1995) ("discretion to file criminal charges lies in district attorney.").[9]

▮▮ The trial court relied upon *Stipetich,* 539 Pa. at 430, 652 A.2d at 1295, for the proposition that district attorneys, not police officers, are responsible for determining "whether to bring charges and, if so, what charges." (citation omitted). In *Stipetich,* police entered into a non-prosecution agreement with a criminal defendant without the consent of the Allegheny County District Attorney. The Supreme Court found this non-prosecution agree-

**9.** Rule 506 of the Rules of Criminal Procedure provides a narrow exception to the general principle that a district attorney's prosecutorial discretion is beyond judicial review. Rule 506 permits a private individual to prepare a criminal complaint and submit it to the district attorney, who then either approves or disapproves the complaint. Rule 506 states:

(A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

(B) If the attorney for the Commonwealth:

(1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

Pa. R.Crim. P. 506. If the district attorney disapproves the complaint, the private com-

plainant can petition the Court of Common Pleas for a review of the disapproval.

In *Commonwealth v. Benz,* 523 Pa. 203, 565 A.2d 764 (1989), our Supreme Court reviewed this rule, in an earlier version, Pa. R.Crim. P. 133. The questions were (1) whether the trial court's decision upholding a prosecutor's decision not to approve a private complaint was appealable to the Superior Court and (2) whether the trial court's review can include a review of a prosecutor's policy decision not to prosecute, *e.g.,* for lack of resources or case load priorities. The Supreme Court held the trial court's order was appealable but that policy reasons for not prosecuting a case were beyond judicial review. In a strong dissent Justice Papadakos, joined by Justice McDermott, argued that the review authorized by Pa. R.Crim. P. 133, now Rule 506, had to be construed as narrowly as possible. Accordingly, the dissent believed that a "trial judge's decision to agree with a district attorney's judgment not to prosecute is unreviewable" by the Superior Court. *Id.,* 523 Pa. at 213, 565 A.2d at 770.

ment to be improper because police officers simply lack authority to bind a district attorney to the decision of whether or when to file criminal charges. The Supreme Court went on to explain that district attorneys are constitutional officers whose powers cannot be restricted by police officers. It explained:

> The elected office of district attorney was created by our constitution, Pa. Const. art. IX, § 4, and its responsibilities are provided by statute. See 16 Pa.S.A. § 4402(a) (district attorney's duty to sign all bills of indictment and conduct in court all criminal prosecutions). The legislature could not have intended that duties of the district attorney would be stripped away by actions of any of the thousands of municipal police officers in the Commonwealth. Affording police officers authority ... that prevent the district attorney from carrying out his duties would present a clear infringement of powers which the constitution and the legislature, as well as our case law, have reposed in the district attorney. Not only would it shift power from an elected and publicly accountable official to appointed public servants, but it would create havoc in the administration of justice by creating unbridled and decentralized decisions about which cases will be prosecuted....

*Id.* at 430–31, 652 A.2d at 1295. In short, the district attorney has the final word on a decision to prosecute or not to prosecute.

 Consistent with these principles, we hold that the trial court correctly dismissed Seeton's mandamus action because it seeks to undo the District Attorney's decision to withdraw the criminal citations Seeton issued to the Pike Township Sportsmen's Association. Mandamus is not a substitute for a statutory remedy that provides the means to review a public official's action and correct error. Rather, a writ of mandamus provides the means to compel a public official to act where he has refused to act. As summarized by our Supreme Court:

> In short, mandamus is chiefly employed to compel the performance (when refused) of a ministerial duty, or to compel action (when refused) in matters involving judgment and discretion. *It is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken.* Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been "sitting on its hands."

*Pennsylvania Dental Association v. Insurance Department,* 512 Pa. 217, 227–28, 516 A.2d 647, 652 (1986) (emphasis added) (citations omitted). The District Attorney has not been "sitting on his hands." To the contrary, he has exercised his authority as chief law enforcement officer for the Commonwealth in Berks County in withdrawing the criminal charges against the Sportsmen's Association from the docket. Whether he is correct in his interpretation of the Animal Cruelty Law is of no moment. Mandamus is not available to "compel the undoing of an action" by a public official "even though the decision was wrong." *Id.*

It is truly shocking that live, not clay, pigeons are catapulted into the air for target practice. However, as observed by the District Attorney, it is for the legislature to address this practice.

For the above-stated reasons, we affirm the trial court.[10]

---

**10.** Because Seeton did not have a clear right to mandamus, we do not address her other assignments of error that relate to her standing to file a mandamus action against the

ORDER

AND NOW, this 9th day of August, 2012, the order of the Court of Common Pleas of Berks County, dated October 29, 2010, in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge McGINLEY.

I humbly dissent because this Court may order, in mandamus, the District Attorney to apply the correct interpretation of the Animal Cruelty Law.

At the outset, I do not agree with the majority that this is a simple case of "prosecutorial discretion." District Attorney Adams' decision to withdraw the Citations was based, not on his "prosecutorial discretion," but on an error of law. That is, he did not believe the conduct alleged, if accepted as true, was unlawful under the Animal Cruelty Law, when in fact, it is. Where a district attorney's decision not to prosecute is based on an alleged error of law, Pennsylvania courts have held that judicial review of that legal judgment is not an intrusion upon prosecutorial discretion.

In *Commonwealth v. Jury*, 431 Pa.Super. 129, 636 A.2d 164 (1993), the District Attorney of Clearfield County stated in his (former) Rule 133 (now Rule 506) Disapproval Statement, that the "allegations by the affiant cannot be proved beyond a reasonable doubt." *Jury*, 636 A.2d at 169. In so doing, he applied the wrong legal standard. The standard required a private complainant "to aver evidence sufficient to mount a prima facie case." *Id.* In

reviewing the issue, the Superior Court initially noted that it was required to review the district attorney's exercise of a legal judgment, and noted that *"such a review of that legal judgment is not an intrusion upon prosecutorial discretion."* *Id.* (Emphasis added).

In *Commonwealth v. Benz*, 523 Pa. 203, 565 A.2d 764 (1989), a plurality decision, our Supreme Court distinguished between a prosecutor's disapproval of a private complaint for reasons of policy and a disapproval based on a legal evaluation of the sufficiency of the complaint. The district attorney in *Benz* had disapproved a private complaint filed by a victim's mother because it failed to make out a *prima facie* case. The trial court reviewed that decision and affirmed the disapproval. On appeal, the Superior Court reversed after concluding that the evidence, if believed, did establish a *prima facie* case.

Our Supreme Court affirmed and explained that because the district attorney's decision not to prosecute was based on a legal evaluation of the merits of the case, the courts were authorized to determine the propriety of that decision. *Benz*, 523 Pa. at 208, 565 A.2d at 767. The Supreme Court held that a decision not to prosecute was within the purview of judicial review where the decision was based on legal determination that there was insufficient evidence to establish a *prima facie* case.

Although these cases involved "private" complaints (as opposed to complaints filed by law enforcement officials) issued under Rule 506 of the Pennsylvania Rules of Criminal Procedure[1] (and its predeces-

District Attorney. We note, however, that, contrary to Seeton's assertions, the basis of the trial court's decision was that Seeton did not have a right to mandamus, not that she lacked standing as a matter of jurisdiction. The trial court referred to "standing" in its decision, but it was in the context of whether

she had a clear right to relief. Therefore, Seeton's standing argument need not be addressed.

1. Pa. R.Crim. P. 506, which was, at different times, previously numbered Rules 105, 133, and 106, authorizes the filing of "private

sors), they recognize a distinction exists between the legitimate exercise of prosecutorial discretion and dismissal of a case purely on legal grounds. One is afforded deference, the other is not.[2]

Here, District Attorney Adams stated very clearly the reason why he believed he was *legally unable to prosecute* when he stated: "I am bound by the law" "pigeon shoots do not constitute a violation of 5511(c) Cruelty to Animals." This was legally incorrect because Pennsylvania courts have only held that live pigeon shoots are not a *per se* violation of the Animal Cruelty Law. The mishandling of wounded and injured pigeons at a live pigeon shoot *is* criminally actionable. *Mohler v. Labor Day Committee, Inc.*, 443 Pa.Super. 651, 663 A.2d 162 (1995).[3]

While much of the majority's opinion is focused on the inviolability of "prosecutorial discretion" District Attorney Adams' "prosecutorial discretion" was not at issue.

"Discretion" is defined as "a public official's power or right to act in certain circumstances according to personal judgment and conscience." Black's Law Dictionary, 478 (7th ed.1999). In deciding whether to prosecute, a prosecutor typically weighs several factors: 1) the sufficiency of the evidence; 2) the suspect's background; 3) any perceived costs and benefits stemming from a conviction; 4) witness difficulties; and 5) community attitudes regarding the suspect and the nature of the offense. Frank R. Miller et al., Prosecution and Adjudication 661–62 (5th ed., Foundation Press 2000).

Here, District Attorney Adams did not exercise his discretion in the sense that he decided, based on his personal judgment and conscience, not to pursue the charges. Rather, he decided not to pursue charges based on his belief that he could not legally prosecute. He ordered the District Justice to "withdraw" the Citations on this basis alone. As he explained, he was "bound to follow the law." The problem was—his version of the law was incorrect.

criminal complaints," i.e., not issued by a law enforcement official. Private criminal complaints must be submitted to the district attorney for approval or disapproval. The district attorney may, in his discretion, disapprove the complaint and shall state the reasons for his disapproval on the complaint form. Thereafter, the affiant may petition the court of common pleas to review of the decision. The standard of review depends on whether the district attorney disapproved the private complaint based solely on legal conclusions, *in which case the trial court will review to determine whether an error of law occurred.* If the district attorney disapproved for policy considerations, i.e., prosecutorial discretion, then the court's standard is abuse of discretion. *In Re Wilson*, 897 A.2d 199 (Pa.Super.2005).

**2.** In *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968), our Supreme Court refuted the district attorney's contention that his office possessed the exclusive authority to decide whether charges should be brought in every case:

A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case. [citations omitted]. *But this broad general power of a District Attorney is subject to the right and power of a Court (a) to provide generally for the orderly administration of criminal justice, including the right and power to supervise all trial and all Court proceedings, and (b) to protect all of a defendant's rights to a fair trial and due process under the Constitution of the United States and the Constitution of Pennsylvania.*
*DiPasquale*, 431 Pa. at 540–41, 246 A.2d at 432 (emphasis added).

**3.** *Mohler* involved the notorious "Fred Coleman Memorial Pigeon Shoot" which was held annually in Hegins, Pennsylvania. At that event, over 6,000 pigeons were released to be shot by participants. It was estimated that of the birds released, 2,000 were wounded.

If the district attorney makes a mistake of law, then our courts have and should continue to review that legal judgment. It is not "an intrusion on prosecutorial discretion."

This controversy is no different from *Commonwealth v. Jury* where the Superior Court "reviewed" the district attorney's erroneous legal decision not to prosecute because it was based on the wrong legal "reasonable doubt" standard; or, *Commonwealth v. Benz* where the Superior Court "reviewed" a district attorney's dismissal of a criminal complaint based on the erroneous legal conclusion that the averments in a complaint did not state a *prima facie* case of homicide. In both these cases, the district attorney's refusal to prosecute was based on an error of law. In both cases, the decision *was reviewable* by our courts. The district attorney's decisions in those cases, because they involved questions of law, not prosecutorial discretion, were subject to the court's review.

The majority has failed to recognize this judicially-recognized distinction between a decision based on a district attorney's "legal decision" and one based on his "exercise of prosecutorial discretion." The majority appears to consider District Attorney Adams' *legal error* and his *prosecutorial discretion* as one in the same. In my view, this is where the majority errs. District Attorney Adams decided not to prosecute based on a legal error. Therefore, his "prosecutorial discretion" was never actually exercised so there was nothing to which the majority owes its unyielding deference.

The law is clear, mandamus is appropriate whenever there is a mistaken view of the law, and there is no actual exercise of discretion. In *Tanenbaum v. D'Ascenzo*, 356 Pa. 260, 263, 51 A.2d 757, 758 (1947), our Supreme Court explained that if the a

public official's refusal to act is based on a misinterpretation of the law, courts may conduct a review. *Tanenbaum* established that in such a case, a refusal to exercise discretion may be addressed in a mandamus action.

In *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa. Cmwlth.1997), this Court explained that "mandamus is an appropriate avenue to compel a governmental body to perform a discretionary act, where its duty to perform that act is mandated by the law, and the body has refused to perform the act based upon an erroneous interpretation of the law." *Weaver*, 688 A.2d at 776 (emphasis added).

In *Weaver*, Ronald Weaver (Weaver) filed an action in mandamus against the Board of Probation and Parole to compel his release on parole. He alleged that the Board erroneously denied him parole because he had refused to participate in a Sex Offenders Program. Weaver argued that the Board's requirement that he participate in the rape treatment program violated his Fifth Amendment right against self-incrimination because it would require him to admit he committed the crime.

Although this Court did not compel the Board to grant parole to Weaver (this was for the Board to determine in an exercise of its discretion), this Court did note that the only relief Weaver might have obtained through mandamus was "for the proper procedures to be followed or the proper law to be applied by the Board in ruling on his application for parole." *Weaver*, 688 A.2d at 777 (emphasis added). This Court explained that in order for mandamus to issue on that basis, Weaver had to establish that the Board's "refusal to grant parole was, as a matter of law, based upon an erroneous conclusion that it had the discretion to deny parole for the reason given." *Id.*

Applying that same rationale, I believe District Attorney Adams failed to exercise his discretion based on an error of law. He did not believe the alleged conduct was unlawful under the Animal Cruelty Law, when if proven, it was. In his view, he was not legally authorized to prosecute; therefore, he never exercised his discretion whether to prosecute based on the substance of the Citations. This is not an exercise of discretion. This was a failure to exercise discretion based on a mistake of law.

I believe that while a district attorney's "decision to prosecute" is and must be discretionary, this ideology is based on the basic underlying premise that it pass legal muster. If a district attorney is wrong on the law, and refuses to prosecute a summary offense because he erroneously believes he is legally precluded from pursuing charges, mandamus may lie to compel him to view the case in the correct context and exercise his discretion based on the correct application of the law.

In sum, I believe that a district attorney has a general and widely recognized power to conduct criminal litigation and prosecution on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case, so long as the discretion is legitimately exercised and the decision is not made based on a mistake of law or contrary to statute.

I would reverse and remand the matter to the common pleas court to direct the district attorney to apply the correct law in determining whether to prosecute Officer Seeton's citations.

Judge LEADBETTER and Judge McCULLOUGH join in this dissent.