IN THE COMMONWEALTH COURT OF PENNSYLVANIA

TOA Green Pond Advisors, LLC :
t/a TOA Green Pond, L.P., :
    Appellant :
      :
  v.    : No. 261 C.D. 2020
      : ARGUED: December 8, 2020
Bethlehem Township and The :
Pidcock Company  :

BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER       FILED: January 5, 2021

  TOA Green Pond Advisors, LLC, t/a TOA Green Pond, L.P. (TOA), appeals from the February 25, 2020 Order of the Court of Common Pleas of Northampton County (Trial Court), which sustained the Preliminary Objections filed by Bethlehem Township (Township) and The Pidcock Company (Pidcock)[1] to TOA's Amended Complaint in Mandamus (Amended Complaint) and dismissed the Amended Complaint. In its Amended Complaint, TOA sought a writ of mandamus to compel the Township to replace Pidcock with the Township's back-up engineer, Arro Consulting, Inc. (Arro), to oversee TOA's construction of a residential development in the Township. Because we conclude that TOA has not established a clear legal right to mandamus relief, we affirm the Trial Court's Order.

---

[1] On January 7, 2020, the Trial Court permitted Pidcock to intervene in this action over TOA's objection.

## Background

TOA owns a 236-acre parcel of land in the Township, which includes a public golf course (Property). TOA received approval from the Township to develop a planned residential golf course community on the Property consisting of 229 age-restricted units (Project). Due to the Project's size, the Township required TOA to post a $13,039,928 bond to secure the construction of improvements on the Property.

On January 2, 2018, the Township's Board of Commissioners enacted Resolution R0005-18, appointing Pidcock to serve as the Township's engineer for a two-year term. On the same date, the Board of Commissioners also enacted Resolution R0006-18, appointing Arro to serve as the Township's back-up engineer. As the back-up engineer, Arro would provide professional consulting services if the Township determined that the use of Pidcock's services would create a conflict of interest, since Pidcock performed consulting services for both municipal and private clients. At a public meeting on January 7, 2019, the Board of Commissioners approved both Pidcock's and Arro's fee schedules.

Section 503(1) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10503(1), permits the Township to charge developers "reasonable and necessary" fees for its professional consultants, including the Township engineer, to review proposed land development plans. Section 503(1) of the MPC states in relevant part:

> Review fees may include *reasonable and necessary charges by the municipality's professional consultants for review* and report[ing] thereon to the municipality. Such review fees shall be based upon a schedule established by ordinance or resolution. Such review fees shall be *reasonable and in accordance with the ordinary and customary charges for similar service in the community*, but in no event shall the fees exceed the rate or cost charged by the professional consultant for

2

comparable services to the municipality for services which are not reimbursed or otherwise imposed on applicants.

53 P.S. § 10503(1) (emphasis added). Section 503(1)(i)-(ii) of the MPC also addresses the procedure to be followed when a developer wishes to challenge a professional consultant's fees:

> (i) . . . In the event the applicant disputes the amount of any such review fees, *the applicant shall*, no later than 100 days after the date of transmittal of the bill to the applicant, *notify the municipality and the municipality's professional consultant that such fees are disputed and shall explain the basis of their objections to the fees charged, in which case the municipality shall not delay or disapprove a subdivision or land development application due to the applicant's dispute over fees.* Failure of the applicant to dispute a bill within 100 days shall be a waiver of the applicant's right to arbitration of that bill under [S]ection 510(g) [of the MPC, 53 P.S. § 10510(g)].

> (ii) In the event that the municipality's professional consultant and the applicant cannot agree on the amount of review fees which are reasonable and necessary, then *the applicant and the municipality shall follow the procedure for dispute resolution set forth in [S]ection 510(g) [of the MPC]*, provided that the arbitrator resolving such dispute shall be of the same profession or discipline as the professional consultant whose fees are being disputed.

53 P.S. § 10503(1)(i)-(ii) (emphasis added).

Section 510(g)(2)-(4) of the MPC outlines the procedure for resolution of a fee dispute as follows:

> (2) If the professional consultant and the applicant cannot agree on the amount of expenses which are reasonable and necessary, then *the applicant shall have the right*, within 100 days of the transmittal of the final bill or supplement to the final bill to the applicant, *to request the appointment of another professional consultant to serve as an arbitrator. The applicant and professional consultant whose fees are being challenged shall, by mutual agreement, appoint another professional consultant to review any bills the applicant has disputed*

3

*and which remain unresolved and make a determination as to the amount thereof which is reasonable and necessary. The arbitrator shall be of the same profession as the professional consultant whose fees are being challenged.*

(3)    The arbitrator so appointed shall hear such evidence and review such documentation as the arbitrator in his or her sole opinion deems necessary and shall render a decision no later than 50 days after the date of appointment. Based on the decision of the arbitrator, the applicant or the professional consultant whose fees were challenged shall be required to pay any amounts necessary to implement the decision within 60 days. In the event the municipality has paid the professional consultant an amount in excess of the amount determined to be reasonable and necessary, the professional consultant shall within 60 days reimburse the excess payment.

(4)    In the event that the municipality's professional consultant and applicant cannot agree upon the arbitrator to be appointed within 20 days of the request for appointment of an arbitrator, then, *upon application of either party, the President Judge of the Court of Common Pleas of the judicial district in which the municipality is located (or if at the time there [is] no President Judge, then the senior active judge then sitting) shall appoint such arbitrator*, who, in that case, shall be neither the municipality's professional consultant nor any professional consultant who has been retained by, or performed services for, the municipality or the applicant within the preceding five years.

53 P.S. § 10510(g)(2)-(4) (emphasis added).

On August 21, 2019, TOA submitted a formal challenge (First Challenge) to Pidcock's fees for services performed between March 24, 2019 and June 25, 2019. On August 27, 2019, TOA submitted a formal challenge (Second Challenge) to Pidcock's fees for services performed between June 23, 2019 and July 20, 2019. The First and Second Challenges questioned the reasonableness of the amounts charged for Pidcock's services, as well as Pidcock's billing practices and the manner in which

4

Pidcock performed its engineering services in connection with the Project. Specifically, TOA raised the following objections to Pidcock's fees and practices:

(a) charges for professional(s) preparing for meeting(s) that were not attended;

(b) bills for more than 200 hours of services provided in connection with a single[-]page email containing eight comments;

(c) bills for more than 35 hours of service to prepare that single[-]page email containing 8 comments;

(d) failure to comply with the MPC regarding security estimates for the public improvements of the [Project];

(e) bills for more than 70 hours of services to review and modify the security estimates for the public improvements of the [Project];

(f) bills for more than 30 hours of services to review stormwater plans notwithstanding that [TOA] had already obtained an NPDES permit from DEP in connection therewith;

(g) bills for over 30 hours of services for the review of the handicap accessibility of the [Project] and the handicap ramps, which review resulted in a comment letter consisting of 2 sentences;

(h) having 19 different professionals involved in the review of the design documents;

(i) bills for 100 hours in connection with internal meetings;

(j) bills for more than 14 hours of services to review an "assignment letter";

(k) using multiple professionals to perform the same tasks;

(l) inconsistencies in the billing records for Pidcock and the Township solicitor for calls between them;

(m) the reasonableness of Pidcock's billing increments;

(n) the reasonableness and necessity of the number of professionals involved in the review of the design document for the [Project];

(o) the reasonableness and necessity of the amount of time spent on many tasks; and

(p) the manner in which billing was completed.

Am. Compl. ¶ 25(a)-(p).

By letter dated September 4, 2019, TOA requested that the Township remove Pidcock from the Project and appoint the back-up engineer, Arro, to oversee the Project. The Township declined to do so.

On October 29, 2019, TOA submitted another challenge (Third Challenge) contesting the reasonableness of Pidcock's fees for services performed between July 21, 2019 and August 24, 2019.

On November 13, 2019, TOA filed in the Trial Court a "Petition to Appoint Mediator Pursuant to 53 P.S. § 10510(g)(4)" (Petition to Appoint), requesting that the President Judge of the Trial Court appoint an independent arbitrator to adjudicate the fee disputes between TOA and Pidcock in accordance with Section 510(g) of the MPC. In its Petition to Appoint, TOA averred that the parties were unable to agree on an independent arbitrator to resolve their disputes. *See* Am. Compl., Ex. 9.[2]

---

[2] On September 16, 2019, TOA proposed two engineers as potential arbitrators, but Pidcock rejected both of them. Pidcock's Pet. to Intervene, Ex. H. On October 10, 2019, Pidcock proposed an engineer as a potential arbitrator, but TOA rejected him because Pidcock was a current client of that engineer's firm. *Id.*, Exs. I, J. On November 4, 2019, Pidcock proposed another engineer to arbitrate the fee disputes. *Id.*, Ex. K. TOA did not respond to this proposal, instead filing the Petition to Appoint in the Trial Court on November 13, 2019. *Id.*, Ex. L.

TOA's Petition to Appoint is still being litigated in the Trial Court under a separate docket number. *See* Trial Ct. Order, 2/25/20, at 3 n.3.[3]

On November 26, 2019, TOA filed its Amended Complaint, seeking to compel the Township to exercise its ministerial duty to replace Pidcock with its back-up engineer to oversee the Project. TOA averred that Pidcock breached its obligations under the MPC by engaging in retaliatory conduct that has created an adversarial relationship between the parties and a conflict of interest that precludes Pidcock from reviewing the Project in a fair and unbiased manner. TOA alleged in pertinent part:

> 95. [TOA] has submitted the [First, Second, and Third] Challenges asserting legitimate claims disputing Pidcock's fees and billing practices.
>
> 96. In light of the dispute, [TOA] and Pidcock are now engaged in an adversarial proceeding, creating a conflict of interest between them.
>
> 97. Pidcock has exacerbated the situation by refusing to proceed through the arbitration process with an independent arbitrator, thereby requiring [TOA] to commence a lawsuit against Pidcock, which is now pending in [the Trial] Court.
>
> 98. The existence of that adversarial relationship alone creates an appearance of impropriety in Pidcock's ability to perform a fair and unbiased review of [TOA's] work.

Am. Compl. ¶¶ 95-98. TOA further alleged that "Pidcock has engaged in a series of conduct designed solely to impede the construction of the [Project] in retaliation for [TOA's] exercise of its statutory rights to contest Pidcock's . . . [f]ees," which "not

---

[3] In its Preliminary Objections, Pidcock avers that "[TOA] and [Pidcock] are involved in a separate proceeding concerning the [Petition to Appoint] that [TOA] filed on November 13, 2019. *See TOA Green Pond Advisors, LLC t/a TOA Green Pond, L.P. v. The Pidcock Company*, Docket No. C-48-CV-2019-10772." Pidcock's Prelim. Objs., ¶ 15.

only violates the Code of Ethics governing engineers, but violates Pennsylvania law." *Id.* ¶¶ 101-02.

In support of its request for mandamus relief, TOA averred as follows:

117. Since the Township has already retained [Arro], the appointment of [Arro] to replace Pidcock for the [Project] is a ministerial act.

118. The Township has a clear duty to perform that ministerial act to avoid a violation of Pennsylvania law and/or to avoid compelling Pidcock to violate the regulations and rules governing engineers.

119. [TOA] has no other adequate remedy at law by which to get the Township to appoint [Arro] to replace Pidcock for review of the [Project].

*Id.* ¶¶ 117-19.

On December 17, 2019, Pidcock filed Preliminary Objections to the Amended Complaint, asserting a demurrer on the grounds that: (1) TOA has no legal right to have Pidcock removed as the Township engineer on the Project; (2) the Township has no duty to remove Pidcock as the Township engineer on the Project; and (3) TOA has an adequate remedy at law under Section 510(g) of the MPC, 53 P.S. § 10510(g). On the same date, the Township also filed Preliminary Objections asserting the same grounds for dismissal of the Amended Complaint.

The Trial Court heard argument on the Preliminary Objections on February 18, 2020, after which it sustained both defendants' Preliminary Objections and dismissed TOA's Amended Complaint. The Trial Court concluded that TOA's request for mandamus was improper because TOA failed to identify a clear legal mandate that Pidcock must be removed from the Project due to the alleged conflict of interest implicated by the underlying fee disputes. The Trial court explained its reasoning as follows:

8

7. Upon review of the Amended Complaint, we agree with Pidcock that [TOA] has not identified a clear legal mandate that Pidcock must be removed as the reviewing engineer as a result of the alleged conflict of interest implicated by the underlying fee dispute. Even accepting all of the allegations of the Amended Complaint as true, [TOA] has not identified a statute, rule or any case[]law that would require the Township to replace Pidcock with [Arro.] [TOA] cites only to general professional licensure and ethical standards, but does not identify any specific provision that precludes further work on a project following a fee dispute. *Assuming that [TOA] could establish that Pidcock's conduct violated professional standards, no professional organization has made such a finding against Pidcock. [TOA] has provided no basis for the removal of Pidcock prior to or in the absence of such a finding.*

8. Further, the [MPC] delineates the process for a developer to challenge the fees assessed by a reviewing engineer. *See* 53 [P.S.] § 10510(g). *This statute prescribes several mandatory actions on the Township and [Pidcock], but specifically does not require that the disputed engineer be precluded from further review of the project, and does not require that the governing body delegate or reassign further review to an alternative engineer.* [TOA] is certainly not the first developer to challenge a reviewing engineer's fees, yet has failed to identify any other case in which a mandamus action was successfully pursued to compel a municipality to utilize a substitute engineer. As noted above, a mandamus action is only appropriate where the legal right is "clearly established." *The fact that there is no other case where [TOA's] alleged right to relief has been upheld leads to the necessary conclusion that the purported right to relief is not clearly established. Consequently, [TOA] has failed to identify both a clear legal right to relief, and failed to identify a well-defined, clear, and specific duty on the part of the Township to undertake the requested action.* [TOA] has not established the necessary elements to maintain the instant mandamus complaint.

9

Trial Ct. Order, 2/25/20, ¶¶ 7-8 (footnote omitted) (emphasis added). TOA now appeals from that decision.[4]

## Analysis

"Mandamus is an extraordinary remedy designed to compel the performance of a ministerial act or a mandatory duty." *Orange Stones Co. v. City of Reading, Zoning Hearing Bd.*, 32 A.3d 287, 290 (Pa. Cmwlth. 2011). The party seeking this extraordinary remedy has the burden of proving its legal right to such relief. *Baron v. Com. Dep't of Hum. Servs.*, 169 A.3d 1268, 1272 (Pa. Cmwlth. 2017) (*en banc*), *aff'd*, 194 A.3d 563 (Pa. 2018). To state a claim for mandamus relief, the petitioner must establish: (1) a clear legal right to relief; (2) a corresponding duty in the respondent; and (3) the lack of any other adequate and appropriate remedy. *Id.*

### 1. Clear Right to Relief

First, TOA argues that it has a clear statutory right to have the Project inspected and approved by an independent Township engineer. According to TOA, the MPC requires both the Township and its professional consultant to remain unbiased when a dispute arises over the consultant's fees. In essence, TOA contends that its challenges to Pidcock's fees have created an adversarial relationship between the parties such that the Township is required to remove Pidcock from the Project.

In support of its contention, TOA relies on Section 503(1)(i) of the MPC, which states:

> In the event the applicant disputes the amount of any such review fees, the applicant shall, no later than 100 days after the date of transmittal of the bill to the applicant, notify the municipality and the municipality's professional consultant that such fees are disputed and

---

[4] "Our scope of review of a trial court order granting preliminary objections is limited to determining whether the trial court committed legal error or abused its discretion." *Bell v. Twp. of Spring Brook*, 30 A.3d 554, 557 n.7 (Pa. Cmwlth. 2011).

10

shall explain the basis of their objections to the fees charged, in which case *the municipality shall not delay or disapprove a subdivision or land development application due to the applicant's dispute over fees*.

53 P.S. § 10503(1)(i) (emphasis added). TOA also relies on Section 510(g)(1) of the MPC, which states that if an applicant disputes a fee, "*the municipality shall not delay or disapprove a request for release of financial security, a subdivision or land development application or any approval or permit related to development* due to the applicant's dispute of inspection expenses." 53 P.S. §10510(g)(1) (emphasis added).

We conclude that neither of these statutory provisions establishes a clear legal right to the relief TOA seeks. Section 503(1)(i) of the MPC addresses *the Township's* responsibility to "not delay or disapprove a subdivision or land development application due to the applicant's dispute over fees." 53 P.S. § 10503(1)(i). Likewise, Section 510(g)(1) addresses *the Township's* responsibility to "not delay or disapprove a request for release of financial security, a subdivision or land development application or any approval or permit related to development due to the applicant's dispute of inspection expenses." 53 P.S. § 10510(g)(1). TOA, however, does not allege that the Township delayed its land development application or approval as a result of the instant fee disputes. In fact, TOA specifically avers that at the time it filed its First Challenge, TOA "had already received its final land development approvals [from the Township] and obtained permits relating to the construction of the [Project]." Am. Compl. ¶ 18. More importantly, contrary to TOA's assertion on appeal, nothing in Section 503(1)(i) or Section 510(g)(1) of the MPC mandates that a municipality remove a professional consultant from a project when a fee dispute (however contentious it may be) arises between the consultant and the developer.

11

Furthermore, the authority to appoint or remove a municipal engineer lies exclusively with the Township. Under Section 1301 of The First Class Township Code (Code), Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 56301,[5] the Township's Board of Commissioners, in its sole discretion, appoints the township engineer:

> *The [township's] board of commissioners at the commencement of the fiscal year in any even-numbered year, or as soon thereafter as may be practicable, may elect, by a vote of a majority of the members, one person as township engineer, who shall be a registered civil engineer.* He shall serve for a term of two years, and until his successor qualifies. The board of commissioners shall fix the compensation of the engineer. Vacancies in the office of township engineer shall be filled by the board of commissioners for the unexpired term.

53 P.S. § 56301 (emphasis added). Section 1303 of the Code further provides that the appointed "engineer shall have the superintendence, direction and control of the engineering matters of the township." 53 P.S. § 56303.

While the Township acknowledges that it has the discretion to remove an appointed engineer from a project, *see* Twp.'s Br. at 16, TOA has cited no legal authority for its position that the Township *must* do so simply because the developer claims that the engineer is biased against it. *See Seeton v. Adams*, 50 A.3d 268, 275 (Pa. Cmwlth. 2012) (*en banc*) (recognizing "the fundamental principle that mandamus is not available to compel an official to exercise his discretion in a particular way"); *see also Pa. Dental Ass'n v. Ins. Dep't*, 516 A.2d 647, 652 (Pa. 1986) ("[Mandamus] is not used to direct the exercise of judgment or discretion in a particular way, nor to direct the retraction or reversal of an action already taken.").

---

[5] The General Assembly amended several provisions of the Code on October 29, 2020. Those amendments did not alter the language in either Section 1301 or Section 1303 of the Code, which are discussed above.

12

Therefore, we conclude that TOA has failed to establish that it has a clear legal right to have Pidcock removed from the Project due to the ongoing fee disputes.

## 2. Ministerial Act or Mandatory Duty

Next, TOA argues that the Township's obligation to direct the back-up engineer to replace Pidcock is ministerial in nature and, thus, may be compelled by mandamus. TOA contends that because Pidcock has demonstrated a conflict of interest, and because the Township has already appointed Arro as its back-up engineer, the Township has a duty to direct Arro to perform engineering services for the Project. We disagree.

A ministerial act is an act that "a public officer is *required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority*, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed." *Council of City of Phila. v. Street*, 856 A.2d 893, 896 (Pa. Cmwlth. 2004) (emphasis added). Moreover, "[t]he petitioner's right to performance of a [ministerial act or] mandatory duty must be *well-defined, clear, and specific*; where any doubt exists, mandamus relief will not lie." *Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018) (emphasis added).

We conclude that TOA has failed to allege a ministerial act or mandatory duty that is well-defined, clear, and specific. The record shows that the Township appointed Arro as its back-up engineer in the event that a conflict existed between Pidcock and a developer at the onset of a project, since Pidcock performs consulting services for both municipal and private clients. *See* Am. Compl. ¶¶ 8, 9; Pidcock's Reply Br. in Support of Prelim. Objs. at 4. However, there is no indication in the record that the Township is required to replace Pidcock with its back-up engineer if an alleged conflict arises *after* a land development project is well underway and

13

approvals and permits have been granted, as in this case.[6] In any event, as discussed above, the Township's decision to appoint or remove a professional consultant is neither a ministerial act nor a mandatory duty; it is entirely within the Township's discretion.

In rejecting TOA's claim for mandamus relief, the Trial Court observed:

[TOA] has not identified a statute, rule[,] or any case[]law that would require the Township to replace Pidcock with the [back-up e]ngineer. [TOA] cites only to general professional licensure and ethical standards, but [it] does not identify any specific provision that precludes further work on a project following a fee dispute.

Trial Ct. Order, 2/25/20, ¶ 7. We agree with the Trial Court that TOA has failed to establish a ministerial act or mandatory duty enforceable by mandamus.[7]

### Conclusion

TOA's factual allegations in support of its request for mandamus relief derive from ongoing fee disputes between TOA and Pidcock. The procedure for resolving such disputes is clearly set forth in the MPC. As the Trial Court correctly observed, "[The MPC] prescribes several mandatory actions on the Township and [its e]ngineer, but specifically does not require that the disputed engineer be precluded from further review of the [P]roject, and does not require that the governing body

---

[6] Pidcock avers that it has been reviewing land development plans for the Project and has inspected the public improvements constructed on the Property since July 2014. Pidcock's Prelim. Objs., ¶¶ 7, 8.

[7] In its appellate brief, TOA also argues, for the first time, that *Pidcock* has a legal obligation to remove itself from the Project due to its perceived conflict of interest. *See* TOA's Br. at 24-25. This argument contradicts TOA's position in its Amended Complaint and before the Trial Court that *the Township* has a mandatory duty to remove Pidcock from the Project. Therefore, because TOA did not raise this claim before the Trial Court, we conclude that it has waived this argument on appeal. *See* Pa. R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

delegate or reassign further review to an alternative engineer." Trial Ct. Order, 2/25/20, ¶ 8. Furthermore, litigation is still pending in the Trial Court regarding the appointment of an independent arbitrator to resolve the parties' fee disputes. TOA has cited no authority establishing its legal right to demand Pidcock's removal from the Project in the midst of these disputes, nor has it cited any legal authority establishing the Township's duty to remove Pidcock from the Project based solely on TOA's allegations of bias and unethical conduct.[8]

Accordingly, because we conclude that TOA has not established a clear legal right to mandamus relief, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

---

[8] Because we conclude that TOA has failed to meet the first two requirements for mandamus relief, we need not address whether TOA has an adequate alternative remedy.

We further note that TOA has filed with this Court a "Reproduced Record," which contains documents post-dating the Trial Court's February 25, 2020 Order. However, it is well-settled that this Court cannot consider evidence on appeal that was not presented to the Trial Court. *See Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Rev.*, 991 A.2d 971, 974 (Pa. Cmwlth. 2009) ("This Court may not consider any evidence that is not part of the certified record on appeal."); *Allen v. Thomas*, 976 A.2d 1279, 1282 (Pa. Cmwlth. 2009) (stating that "an appellate court cannot consider anything that is not part of the record" before the trial court). Therefore, we will not consider TOA's extra-record evidence.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

TOA Green Pond Advisors, LLC      :
t/a TOA Green Pond, L.P.,           :
              Appellant        :
                                   :
        v.                  : No. 261 C.D. 2020
                                     :
Bethlehem Township and The   :
Pidcock Company             :

# **O R D E R**

AND NOW, this 5th day of January, 2021, the Order of the Court of Common Pleas of Northampton County, entered on February 25, 2020, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge