IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Corbo,                              :
                    Appellant             :
                                          :
        v.                                : No.  830 C.D. 2023
                                          : Argued:  November 7, 2024
Chester County, and District Attorney     :
Deb Ryan in her Official Capacity         :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE WALLACE                              FILED:  April 10, 2025


        Daniel Corbo (Corbo), a police officer for East Pikeland Township Police
Department (Township), appeals the order of the Court of Common Pleas of Chester
County (trial court), docketed July 5, 2023 (Order), which granted Chester County,
and District Attorney Deb Ryan in her Official Capacity's (collectively, the District
Attorney) Motion for Judgment on the Pleadings (Motion) and dismissed Corbo's
Complaint.  After review, we reverse and remand.

## BACKGROUND

        On October 28, 2020, Corbo initiated this action by filing a Writ of Summons
with the trial court.  Reproduced Record (R.R.) at 8a.  On December 14, 2020, Corbo
filed a Complaint against the District Attorney.  *Id.* at 15a.  In his Complaint, Corbo
alleges the District Attorney placed Corbo on a list, which he asserts is "a 'blacklist'
maintained by the [District Attorney] that results in anyone on the list never being

called to testify in court and in fact being prevented by the [District Attorney] from testifying in any court in [Chester County]." *Id.* at 16a. Corbo's placement on this "list" prevents Corbo from performing substantial portions of his job because police officers are often required to testify. *Id.* Township informed Corbo that if he remains on the "list," he cannot perform his job, and thus Township will terminate his employment. *Id.* at 17a.

In his Complaint, Corbo indicates the District Attorney's decision to put him on the "list" was made without "due process of law, both substantive and procedural, in violation of the United States Constitution and the Pennsylvania Constitution." *Id.* Corbo maintains the District Attorney failed to record any proceedings leading to her decision, failed to call any witnesses, failed to offer any witnesses for cross-examination, and failed to hold a hearing before making her decision to add Corbo to the "list." *Id.* Additionally, Corbo contends the District Attorney acted "as both prosecutor and judge, improperly commingling prosecutorial and adjudicative functions." *Id.* Corbo indicates the District Attorney's decision to put him on her "list" deprived him of his right to engage in his occupation as a police officer. *Id.* Corbo requests the court "overturn the Decision made" by the District Attorney or, alternatively, "provide a *de novo* hearing." *Id.* at 18a-19a.

On January 15, 2021, the District Attorney filed preliminary objections to Corbo's Complaint, which the trial court overruled on May 2, 2022. *Id.* at 25a, 118a. On May 22, 2022, the District Attorney filed an Answer and New Matter. *Id.* at 164a. In her Answer, the District Attorney denied "blacklisting" Corbo, and she asserted she "correctly determined that [Corbo] was unfit to testify as a witness due to his improper conduct in or about November 2015 as a police officer in [Township]." *Id.* at 166a. She alleged that in 2015, Corbo provided confidential

information about a criminal investigation to his ex-girlfriend whose ex-husband was the subject of that criminal investigation. *Id.* When county detectives later interviewed Corbo about the improper disclosure, the District Attorney contends Corbo "provided inaccurate and/or false statements to the [d]etectives." *Id.*

Further, in her Answer, the District Attorney asserted she provided Corbo adequate notice and an opportunity to present his position as to why he should be allowed to testify. *Id.* After Corbo presented his position, he and his attorney entered a Proffer Agreement. *Id.* Subsequently, Corbo and his attorney met with representatives of the District Attorney's Office, Corbo's counsel argued on his behalf, and Corbo submitted letters of recommendation. *Id.* After this meeting, the District Attorney's Office notified Corbo, Corbo's attorney, and Corbo's supervisor of the District Attorney's decision that Corbo would not be permitted to testify, but that he could apply for reinstatement in two years. *Id.*

Corbo filed his Answer to the District Attorney's New Matter on July 6, 2022. *Id.* at 232a. In his Answer, Corbo denied the District Attorney's assertion that a "Do Not Use" list does not exist. *Id.* Corbo admitted that in November 2015, he received an email containing a bulletin from another police department (Bulletin) at his work email address. *Id.* The Bulletin identified a suspect in a burglary and requested officers not make contact with the suspect. *Id.* Corbo admitted he sent the email containing the Bulletin to an ex-girlfriend, who almost immediately forwarded the email to the named suspect. *Id.* County detectives interviewed Corbo about the disclosure of the email. *Id.* Corbo contends he told the county detectives he did not use his official police email account to communicate with his ex-girlfriend, and while he agrees this was inaccurate, he explains that at the time, his personal and work emails were tied together. *Id.* Additionally, Corbo admits to telling the county

3

detectives he sent the communication to his ex-girlfriend about the investigation approximately "a month" after receiving the Bulletin, and while he agrees this was inaccurate, he explains it had been several months after he sent the email before he estimated when he sent it. *Id.*

On September 1, 2022, the District Attorney filed her Motion. The trial court issued its Order granting the District Attorney's Motion and dismissing Corbo's Complaint. In its Memorandum Opinion,[1] the trial court found the following facts:

> Corbo is a police officer in East Pikeland Township, Chester County, Pennsylvania. While on active duty, on or about November 2015, [Corbo] provided confidential information regarding a criminal investigation to his ex-girlfriend, whose ex-husband was the subject of the criminal investigation. The information was for law enforcement only.
> [Corbo's] ex-girlfriend did provide the confidential information to her ex-husband. [Corbo] was ultimately interviewed by County Detectives regarding the improper disclosure by [Corbo]. During the interview, [Corbo] was inaccurate in his statements.
> On September 28, 2020, the District Attorney notified [Corbo] and his Attorney [that Corbo] would not be called to testify in any proceeding, unless exceptional, for two (2) years. It could be revisited after the two years. Thus, [Corbo] was placed on Giglio[2] "Do [N]ot [U]se" status, not a Giglio "Do [N]ot [U]se" list.
> Apparently, Corbo was not removed after two years and would stay on a "Do [N]ot [U]se" status approximately until September 28, 2024.

R.R. at 474a.

Based on these facts, the trial court concluded the District Attorney "has the executive power to decide not to use [Corbo] in this case, and in fact has the power

[1] The trial court incorporated and submitted this Opinion and Order in accordance with Pa.R.A.P. 1925(a) rather than file a new opinion. Trial Court's Opinion, 12/5/23.

[2] "Giglio" references the case of *Giglio v. United States*, 40 U.S. 150 (1972). *See* discussion *infra* pp. 12-13.

to use any witness in a criminal proceeding." *Id.* at 474a. The trial court explained Corbo's actions of providing confidential information regarding a criminal investigation to a friend "seem[] to be an egregious action," and the "sanctions by the District Attorney give[ Corbo] the ability to get removed from a 'Do [N]ot [U]se' status and allow [Corbo] to obtain a 'clean' status. [Corbo] needs only to 'toe the line' and his sanctions would end." *Id.* at 474a-75a. Further, the trial court reiterated that the District Attorney's "sanctions are not lifetime ones. If [Corbo] simply abides by the sanctions, she [sic] will be able to obtain a clean record. The District Attorney, as the Chief Law Enforcement Officer of the County of Chester, as such, he [sic] can use his [sic] power to refuse to allow unreliable witnesses to be called by the Commonwealth." *Id.* at 475a.

Corbo now appeals to this Court. On appeal, Corbo argues the trial court's Order should be reversed because the trial court failed to apply the correct legal standard and failed to consider the facts in a light most favorable to Corbo, as the non-moving party, thereby violating his due process rights. Corbo's Br. at 3. In response, the District Attorney asserts the trial court properly granted her Motion because Corbo failed to claim a violation of substantive due process because he failed to identify a constitutionally protected right and only presented a theoretical claim that his possible promotion or future employment could be affected. District Attorney's Br. at 4. Additionally, the District Attorney contends she did not violate procedural due process because Corbo admits the District Attorney provided notice of the protocols employed by the District Attorney's Office in making its decision, Corbo had notice of the basis for the adverse decision against him, and the District Attorney provided two opportunities for Corbo to challenge her decision. *Id.* Further, the District Attorney maintains the trial court correctly concluded the

5

decision whether to call a witness to testify in any particular case is within the executive discretion of the District Attorney. *Id.* Moreover, the District Attorney contends because she made the decision in the course of her official duties, she has immunity from Corbo's civil claims. *Id.* at 5. Finally, the District Attorney argues Corbo's claim should be barred because he did not appeal or request consideration of the previous district attorney's decision of March 20, 2019, initially placing him on the list, within 30 days of that decision as required by 42 Pa.C.S. § 5571(b). *Id.*

**DISCUSSION**

Our review of an order granting judgment on the pleadings is limited to determining whether the trial court committed an error of law or abused its discretion. *White v. City of Philadelphia*, 712 A.2d 345, 345 n.1 (Pa. Cmwlth. 1998). Because we are reviewing an order granting judgment on the pleadings, we confine our review to the pleadings and any properly attached documents. *Foust v. Pa. Dep't of Hum. Servs.*, 305 A.3d 1128, 1132 n.3 (Pa. Cmwlth. 2023) (citation omitted). Further, we "accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted." *Id.* We must determine whether the law makes recovery impossible on the facts averred. *Cagey v. Commonwealth*, 179 A.3d 458, 463 (Pa. 2018) (citation omitted). We will sustain a trial court's grant of judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise. *N. Sewickley Twp.*, 786 A.2d at 327.

The Pennsylvania Rules of Civil Procedure set forth the procedure for filing a motion for judgment on the pleadings. Under Pennsylvania Rule of Civil Procedure 1034(a), after the relevant pleadings are closed, but within such time as

6

not to unreasonably delay the trial, any party may move for judgment on the pleadings. Pa.R.Civ.P. 1034(a). The court shall then "enter such judgment or order as shall be proper on the pleadings." Pa.R.Civ.P. 1034(b). A motion for judgment on the pleadings is a pretrial mechanism that can save the parties the expense of going to trial on the merits before examining the legal sufficiency of the case. *DiAndrea v. Reliance Sav. & Loan Ass'n*, 456 A.2d 1066, 1069 (Pa. Super. 1983).[3] A "motion for judgment on the pleadings is in the nature of a demurrer in which all of the nonmovant's well-pleaded allegations are viewed as true." *Kerr v. Borough of Union City*, 614 A.2d 338, 339 (Pa. Cmwlth. 1992) (citation omitted). A party moving for judgment on the pleadings "must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party." *Pfister v. City of Phila.*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009).

To assert that a "possible affirmative defense exists to a complaint is not to say that such a complaint is legally insufficient on its face." *Goldman v. McShain*, 247 A.2d 455, 461 (Pa. 1968). A party may not rely on an "affirmative defense to sustain a motion for judgment on the pleadings, unless of course [the non-moving party] has failed to deny the allegation in [the moving party's] new matter which raises the defense." *Id.*

In determining whether a party admits or denies facts in a pleading, we turn to the Pennsylvania Rules of Civil Procedure. Under Pennsylvania Rule of Civil Procedure 1029(a), responsive pleadings

---

[3] Although Pennsylvania Superior Court cases are not binding on this Court, such cases may offer persuasive precedent where they address analogous issues. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 679 n.20 (Pa. Cmwlth. 2021). The Superior Court cases cited herein are relied on for their persuasive value.

shall admit or deny each averment of fact in the preceding pleading or any part thereof to which it is responsive. A party denying on a part of an averment shall specify so much of it as is admitted and shall deny the remainder. Admissions and denials in a responsive pleading shall refer specifically to the paragraph in which the averment admitted or denied is set forth.

Pa.R.Civ.P. 1029(a). Likewise, any averments in a pleading "to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission." Pa.R.Civ.P. 1029(b). Where a party states that after reasonable investigation, the party is without knowledge or information sufficient to form a belief, such statement has the effect of a denial. Pa.R.Civ.P. 1029(c). Additionally, averments in a pleading to which no responsive pleading is required are deemed to be denied. Pa.R.Civ.P. 1029(d). Furthermore, in determining whether a party had admitted material factual allegations, we examine the pleadings as a whole. *Cercone v. Cercone*, 386 A.2d 1, 6 (Pa. Super. 1978). Additionally, we keep in mind that the rules of civil procedure are to be "liberally applied to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantive rights of the parties." Pa.R.Civ.P. 126.

Here, Corbo argues that in granting the District Attorney's Motion, the trial court failed to observe and comply with the legal standard of review governing motions for judgment on the pleadings. We agree. The trial court's Order contains findings of fact that are plainly inconsistent with Corbo's pleadings. Specifically, the trial court found Corbo "was placed on Giglio 'Do [N]ot [U]se' **status**, not a

8

Giglio 'Do [N]ot [U]se' **list**." R.R. at 474a (emphasis added). However, in his Complaint, Corbo explicitly pled the District Attorney "made a decision to place Corbo on a **list** . . . . the **list** is a 'blacklist' maintained by the [District Attorney] that results in anyone on the list never being called to testify in court and in fact being prevented by the [District Attorney] from testifying in any court in the [c]ounty." *Id.* at 16a (emphasis added). Corbo goes on to aver his placement "on the **list** prevents [him] from performing substantial portions of his job." *Id.* (emphasis added).

Further, Corbo indicates the District Attorney's decision to "blacklist" him was made without substantive or procedural due process. *Id.* at 17a. In the District Attorney's New Matter, she contends the District Attorney "does not maintain a 'Do Not Use' list," and, in his Answer, Corbo denies that assertion. *Id.* at 345a. Additionally, in Corbo's Response to the District Attorney's Requests for Admission – Set II, Corbo indicates the following: "[W]hile the District Attorney's Office has been willing to meet with [Corbo] and his counsel on this topic every few years, it has now been over seven (7) years and the District Attorney's Office has shown no indication of changing its position on [Corbo's] status and inclusion on its 'Do Not Use **List**.'" *Id.* at 470a (emphasis added). A review of the pleadings reveals Corbo has undeniably pled the existence of a "list" and his placement on it. Additionally, the trial court found Corbo has the ability to be removed from his "status" if he obtains a "clean status" and "toes the line." *Id.* at 475a. These trial court findings are inconsistent with Corbo's pleadings, Corbo does not admit them, and thus these findings are in dispute. In issuing these findings which are wholly inconsistent with Corbo's pleadings and admissions, the trial court failed to apply the correct legal standard, and accordingly, the trial court has erred.

9

Disregarding the trial court's factual findings and considering, instead, only Corbo's well-pled statements of fact and specific admissions, *see Foust*, 305 A.3d at 1132 n.3, we address the District Attorney's arguments. First, the District Attorney argues the trial court's entry of judgment on the pleadings is proper because her "decision to call or not call witnesses to testify in any particular case is particularly within the executive discretion of the District Attorney." District Attorney's Br. at 4. We agree that district attorneys maintain broad discretion regarding criminal litigation on behalf of the Commonwealth. Indeed, Section 206 of the Commonwealth Attorneys Act[4] provides: "The district attorney shall be the chief law enforcement officer for the county in which he [or she] is elected." 71 P.S. § 732-206. It is well settled that district attorneys "have the power-and the duty-to represent the Commonwealth's interests in the enforcement of its criminal laws." *Commonwealth ex rel. Specter v. Bauer*, 261 A.2d 573, 575 (Pa. 1970). Further, the district attorney is "statutorily and constitutionally responsible for law enforcement at the local level." *Commonwealth v. Schab*, 383 A.2d 819, 824 (Pa. 1978).

To support her argument, the District Attorney relies on *Seeton v. Adams*, 50 A.3d 268, 272 (Pa. Cmwlth. 2012). In *Seeton*, a humane society police officer filed an action against a district attorney. *Id.* at 269. The officer sought a writ of mandamus to compel the district attorney to prosecute a sportsmen's association for allegedly violating animal cruelty laws. *Id.* The officer sought the writ after the district attorney withdrew citations Seeton filed against the sportsmen's club. *Id.* This Court noted district attorneys are responsible "for all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a

---

[4] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 – 732-506.

10

party, which arise in the county for which [they are] elected" and that district attorneys "are responsible for determining whether to bring charges and, if so, what charges." *Id.* at 275 (citation omitted). Ultimately, we concluded the district attorney "has the final word on a decision to prosecute or not to prosecute," and thus we rejected Seeton's request for mandamus relief. *Id.* at 278.

The District Attorney also relies on *Commonwealth v. Stipetich*, 652 A.2d 1294 (Pa. 1995). In *Stipetich*, the trial court dismissed criminal complaints filed against individuals who had entered into non-prosecution agreements with police officers unbeknownst to the district attorney's office. *Id.* On appeal, the Pennsylvania Supreme Court explained:

> It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any given case. "A [d]istrict [a]ttorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case."
>
> The district attorney's power to prosecute cannot be restricted by the actions of municipal police officers who might, in any given case, deem it worthless or ill-advised to prosecute. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers have no authority to enter agreements limiting the power of the district attorney in this regard.

*Stipetich*, 652 A.2d at 1295 (internal quotations and citation omitted). Based on the discretion of the district attorney, the Court determined the police had no authority to bind the district attorney's office into a non-prosecution agreement. *Id.* at 1296. The District Attorney also cites *Commonwealth v. Palermo*, 81 A.2d 540 (Pa. 1951), to support her assertion the Pennsylvania Supreme Court has long and expressly held

the decision whether to call a witness to testify falls squarely within the district attorney's discretion.

While we agree with the District Attorney these cases demonstrate the broad authority and discretion of prosecutors in the Commonwealth, we disagree any of these decisions address the specific issue Corbo raises here. The issue Corbo raises is the District Attorney's placing him on the "list," effectively a "Do Not Call"[5] list. An officer's inclusion on a list of witnesses excluded from any future hypothetical trial, regardless of the officer's role or testimony, is preemptive in nature. Functionally, a prosecutor's decision to include a police officer on a "Do Not Call" list prevents an officer from performing primary functions of police work. Consistent with Corbo's pleadings in this case, inclusion on such a list can result in an officer's termination from employment because the officer is no longer capable of performing many police functions or duties. Thus, for these reasons, a police officer's inclusion on such a list can be career-ending.

We recognize prosecutors, including the District Attorney, have a duty to comply with standards set forth in *Giglio v. United States*, 40 U.S. 150 (1972). In *Giglio*, the United States Supreme Court held that prosecutors have a constitutional obligation to turn over evidence that can be used to impeach the credibility of a Commonwealth witness "[w]hen the 'reliability of [the] witness may well be determinative of guilt or innocence.'" *Id.* at 154 (citation omitted). In light of this standard, prosecutors may decline to call witnesses who have impeachable testimony. A prosecutor's decision not to call a police officer to testify due to these *Giglio* standards is often referred to as the "*Giglio* impairment," and the inclusion of these "Giglio impaired" police officers on a district attorney's "list" are commonly

---

[5] The term "Do Not Call" list is used interchangeably with "Do Not Use" list throughout this Opinion.

12

referred to as "*Giglio* lists." *See* Jeffrey Steven McConnell Warren, Esq., *The Scarlet Letter: North Carolina, Giglio, and the Injury in Search of A Remedy*, 12 Wake Forest L. Rev. Online 24, 25 (2022).

In *Fraternal Order of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 547 (Pa. Cmwlth. 2021), this Court discussed the constitutional implications involved when police officers are included in these "Do Not Call" lists, labeling such lists a "blacklist of sorts." In *Lodge No. 5*, a district attorney compiled materials from police officers' personnel files about alleged police misconduct to update a "Do Not Call" list of police officers who the district attorney considered too "questionable to testify." *Id.* at 536. The police union filed an action in equity against the district attorney and the city arguing compiling information to create a list of officers deprived the officers included on such lists of their due process rights. *Id.* at 539-40. Their due process rights were violated because they received no prior notice or opportunity to challenge their placement on the "Do Not Call" list. *Id.* The district attorney and the city filed preliminary objections asserting the harm alleged was hypothetical and speculative, and any due process claims regarding the officers' fundamental right to reputation did not state a valid claim. *Id.* at 540. The district attorney also argued injunctive relief to compel affirmative action was not an available remedy against him because he was acting in his official capacity. *Id.* The trial court sustained the preliminary objections and dismissed the police union's complaint. *Id.* at 540-41. The trial court found the actions the union was complaining of were well within the district attorney's capacity as prosecutor, including the obligation to disclose exculpatory and impeachment evidence that bears on a witness's credibility. *Id.* In addition, the trial court found the police union

failed to establish the existence of a "Do Not Call" list, and that the District Attorney possessed absolute immunity from liability. *Id.*

In *Lodge No. 5*, regarding the trial court's dismissal of the police union's complaint on the basis that it failed to "produce evidence" that the district attorney kept or maintained a "Do Not Call" list, this Court explained that because this was a ruling on preliminary objections, the trial court was required to accept as true all well-pled averments in the complaint. *Id.* at 543. Because the complaint sufficiently pled there was a "Do Not Call" list maintained by the district attorney, the trial court's rejection of that averment was erroneous, and its basis for sustaining the preliminary objections on such a ground was error. *Id.*

Regarding the due process claims, this Court explained:

The government is prohibited from depriving individuals of life, liberty, or property, unless it provides the process that is due. The basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. A due process claim requires a two-part analysis: (1) whether there is a life, liberty, or property interest with which the state has interfered; and (2) whether the procedures attendant to that deprivation were constitutionally sufficient.

*Id.* at 545-46. The Pennsylvania Constitution establishes a right to protect one's reputation as one of the fundamental rights that cannot be abridged without compliance with state constitutional standards and due process and equal protection. *Id.* at 546. Therefore, this Court concluded the district attorney's procedure, which restricted challenges to the "correctness" of the information relied upon by the district attorney did not serve as a meaningful opportunity to be heard on an issue. *Id.* at 550. Moreover, this Court held "adequate due process requires an ***impartial*** tribunal" and "it is not an adequate remedy to leave the decision to the very person

14

whom the [union police officers] contend mistakenly and unfairly placed them on the [l]ist in the first place." *Id.* (emphasis in original).

Furthermore, this Court explained "that the interests of the . . . police officers in their reputations and careers is such that there must be some post-placement mechanism available for an officer to seek removal from the Do Not Call List if the grounds for placement on the [l]ist are thereafter shown to be lacking in substance." *Id.* at 549. We explained:

> First, the due process right asserted by the officers relates to the impropriety of ***being placed on*** the Do Not Call List. Second, neither *Brady*[*v. Maryland*, 373 U.S. 83 (1963),] nor *Giglio* eliminate the right of innocent officers to be afforded a meaningful opportunity to argue why they should not be placed on the [l]ist or why they should be removed prior to any public disclosure of the [l]ist. Whether the appellant police officers, who have been exonerated of misconduct charges, must be given the opportunity to argue why they should not be on the Do Not Call List before it is disclosed to the public involves an inquiry, which is separate from the District Attorney's duty to disclose potentially exculpatory and impeachment information under *Brady* and *Giglio*. An officer may be afforded due process to argue why he should not be on the Do Not Call List without violating *Brady*.

*Id.* at 545 (emphasis in original).

Finally, regarding the district attorney's assertion the doctrine of absolute immunity barred any due process claims, we concluded that while prosecutors are immune from lawsuits challenging their official conduct, the police officers sought declaratory and injunctive relief to enjoin an alleged constitutional due process violation. *Id.* at 550-51. We outlined the following:

> In *Fawber v. Cohen*, . . . 532 A.2d 429 ([Pa.] 1987), our Supreme Court explained that governmental immunity cannot shield these types of claims, which simply seek to restrain state officials from performing affirmative acts, as follows:

15

> The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel *affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek to *restrain state officials* from performing affirmative acts are not within the rule of immunity.

*Id.* at 433-34 (emphasis in original).

*Lodge No. 5*, 267 A.3d at 551. Because the union did not seek damages or to compel an affirmative act by the district attorney, immunity did not bar the police officers' claims for injunctive or declaratory relief. *Id.*

Turning back to the District Attorney's arguments here, the District Attorney asserts there can be no violation of due process in this case because Corbo admits he received the District Attorney's Office's *Giglio* protocols, Corbo admits he received notice from the District Attorney regarding the decision, and Corbo had an opportunity to present evidence on his own behalf. District Attorney's Br. at 4. However, as we explained in *Lodge No. 5*, 267 A.3d at 550, adequate due process requires an "**impartial** tribunal," and it is not an adequate remedy to permit a challenge to the District Attorney's decision to the District Attorney who Corbo asserts unfairly placed him on the "Do Not Call" list in the first place.[6] Certainly, even if we were to conclude Corbo admits to receipt of the protocols, receipt of the notice regarding the District Attorney's decision, and an ability to present his own

---

[6] While we acknowledge the nature of the *Lodge No. 5* case differs from the case before us, we extend our reasoning and conclude adequate due process requires an "impartial tribunal" in this matter just as it did in *Lodge No. 5*.

testimony or evidence, he has still pled adequate facts to allege a violation of due process rights.

Next, the District Attorney contends the trial court properly granted judgment on the pleadings because the District Attorney maintains absolute immunity. Again, as we addressed in *Lodge No. 5*, prosecutors maintain immunity from litigation challenging their official conduct, but just as in *Lodge No. 5*, Corbo seeks constitutional compliance.

Likewise, we do not agree with the District Attorney's argument that Corbo failed to set forth a due process claim where "no constitutionally protected right has been identified, and only a theoretical claim of possible promotion or future employment affected exists." District Attorney's Br. at 4. While the police union in *Lodge No. 5* focused on the officers' reputations, we also addressed the obvious career implications for police officers given the importance of their reputation and ability to perform basic tasks of their careers.

> There can be little question that placement on a formal list of officers who are deemed untrustworthy or unworthy of the privilege of testifying in support of a prosecution could very well be detrimental to their reputations in the community and in the employment context if released. The appellant police officers must deal with other officers, their superiors, district attorneys, defense counsel, and the public during the course of their employment. This is especially so when the allegations against the officers are deemed to be unfounded. As explained in an article in the Stanford Law Review:
>
> > [T]he *Brady*-cop[7] designation immediately puts a question mark on the officer's ability to testify, and that question mark has severe employment consequences. An officer who cannot

---

[7] The "*Brady*-cop" designation refers to the case of *Brady*, 373 U.S. at 87, in which the United States Supreme Court held due process requires the prosecution to provide a criminal defendant with any evidence in its possession that is favorable to him when it is material to his guilt or punishment. Thus a "*Brady*-cop" designation is like a "*Giglio* impaired" officer designation. *See supra* pp. 12-13.

17

be counted on to testify also cannot be counted on to make arrests, investigate cases, or carry out any other police functions that might lead to the witness stand. *Brady* cops may thus find themselves fast-tracked for termination and hard-pressed to find future work.

Considering the grave employment consequences, one might expect strong substantive and procedural protections to guard against mistakenly or unfairly placing an officer on the *Brady* list. But that is not the case. Unlike in police department disciplinary proceedings, which provide many procedural protections to accused officers, prosecutors can make *Brady*-cop designations based on flimsy evidence and without giving officers an opportunity to contest the allegations beforehand or to appeal the decisions afterward. Even if, on appeal, the officer overturns the misconduct finding that landed him on the *Brady* list, the prosecutor can continue to label the officer as a *Brady* cop if he doubts the officer's credibility. And forget whatever progressive discipline system might govern the traditional punishment of police misconduct: a prosecutor can put an officer on the *Brady* list for a small, first-time offense and leave her there for life without giving her any chance to clear her name.

Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan. L. Rev. 743, 780-82 (Apr. 2015) (footnotes omitted).

*Lodge No. 5*, 267 A.3d at 547-48.

In government employment situations, under both the Local Agency Law[8] and procedural due process, an employee has been held to possess a property right in employment if he has an enforceable expectation to continued government employment. *Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1282 (Pa. 1984). Corbo, as a full-time police officer with Township, maintains an enforceable

---

[8] 2 Pa.C.S. §§ 551-555, 751-754.

18

property interest in his continued employment as a police officer.[9] While due process does not protect against remote, future, indirect, or speculative rights, *see Beauty Hall, Inc. v. State Board of Cosmetology*, 210 A.2d 495, 498 (Pa. 1965), Corbo has sufficiently pled his employment is currently impacted because his inclusion on the "Do Not Call" list prevents him from performing his job as a police officer. R.R. at 16a. Additionally, he has pled his right to reputation is at issue. *Id.* at 19a.

Finally, we see no merit in the District Attorney's argument that Corbo's claim should be barred because he did not appeal to the trial court or request reconsideration of the previous district attorney's decision of March 20, 2019, within 30 days. The District Attorney relies on Section 5571(b) of the Judicial Code, which provides "an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry from which the appeal is taken, in the case of an interlocutory or final order." 42 Pa.C.S.

---

[9] *See* what is commonly known as the Police Tenure Act, Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§ 811-816, in which Section 2 provides:

> No person employed as a regular full time police officer in any police department of any township of the second class . . . shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed.

53 P.S. § 812. We note that Township is a second-class township, and, accordingly, Corbo, as a "regular full time police officer," may not be suspended, removed, or reduced in rank except in these five specified circumstances.

§ 5571(b). However, this matter was not filed as an appeal and the parties have seemingly not treated it as such. Thus, it is of no moment whether it was filed within 30 days of the District Attorney's decision. Notwithstanding, even if this was deemed an appeal of the District Attorney's determination, we would consider it timely. Following a meeting with the District Attorney's Office, Corbo, and Corbo's counsel, the District Attorney's Office sent Corbo a letter dated September 28, 2020. The letter provides the following:

> Dear Officer Corbo:
>
> Thank you for taking the time to meet with us on August 7th. I know I speak for all of my colleagues when I say we appreciated your professionalism and sincerity in what was undoubtedly an uncomfortable meeting.
>
> In addition to speaking with you, we have reviewed the materials concerning your actions on or about November 23, 2015 and the subsequent investigation, spoken with your Chief, Suzette Wilson, reviewed the written materials present [sic] by your counsel Joseph DiGiorgio, and listened and considered his arguments on your behalf.
>
> After discussing this matter our position remains the same. Specifically our position is that there is information from the November 3, 2018 incident that is material to your credibility and which is required to be disclosed in any criminal case where you are a potential witness.
>
> Further, our position remains that we will not call you as a witness in any capacity, nor will we accept any warrant where you are the affiant, absent extraordinary circumstances as determined by the District Attorney. Your Chief will be notified that this remains our position.
>
> Under our office's Law Enforcement Impeachment Policy you may contact us to petition for reconsideration of this determination in two years. Until that time, our determinations will remain in place.

R.R. at 228a-29a. Insofar as the meeting between Corbo and the District Attorney's Office was a proceeding, the proceeding was under a new District Attorney and

subject to updated law enforcement impeachment protocols. Thus, the District Attorney's decision and letter following that proceeding and determining Corbo would not be called to testify constituted a final order. Corbo initiated this action on October 28, 2020, which was within 30 days from the date of the District Attorney's letter. We agree with Corbo's assertion that he is challenging this District Attorney's determination, and, therefore, if this had been an appeal, it would have been timely.

## CONCLUSION

In ruling on the District Attorney's Motion, the trial court failed to accept as true Corbo's well-pled statements of fact and admissions. The trial court specifically found Corbo is **not** on a "Do Not Call" list despite Corbo's pleadings otherwise, i.e., that he **is** on the District Attorney's "Do Not Call" list. Because the trial court prematurely rejected Corbo's contention that he was on a "Do Not Call" list rather than accepted his well-pled allegations in the Complaint as true, we must conclude the trial court's basis for granting the District Attorney's Motion was error. Certainly, there is a material factual difference between the District Attorney placing Corbo on a "Do Not Call" **list** and the District Attorney deciding not to call Corbo on a case-by-case basis. This Court has concluded police officers have certain due process rights associated with being included on these "Do Not Call" lists, and thus, whether a police officer is on such a list is a material factual determination that must be made. Evidently, Corbo and the District Attorney contest the existence of such a "list." Therefore, we conclude the District Attorney's right to succeed is not "certain" or "so free from doubt that trial would be a fruitless exercise." *See N. Sewickley Twp.*, 786 A.2d at 327.

21

Accordingly, we reverse the trial court's Order and remand this matter for further proceedings.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Corbo,                                    :
                           Appellant    :
                                                 :
        v.                              :  No.  830 C.D. 2023
                                                 :
Chester County, and District Attorney   :
Deb Ryan in her Official Capacity       :


# **O R D E R**


**AND NOW**, this 10th day of April 2025, the Court of Common Pleas of Chester County's order docketed July 5, 2023, is **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this Opinion.


Jurisdiction relinquished.


_____
STACY WALLACE, Judge